THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BELA BORCSOK, Appellant.

Second Department, February 19, 1985

**APPEARANCES OF COUNSEL**

*Michael F. Sirignano* for appellant.

*Carl A. Vergari, District Attorney* (*Terry Jane Ruderman* and *Gerald D. Reilly* of counsel), for respondent.

**OPINION OF THE COURT**

GIBBONS, J.

On April 17, 1981, the lifeless body of David Moriarty was found half submerged in a pond located next to the Sprain Brook Parkway in Yonkers, New York. The apparent instrument of death, a blood-stained hammer, was recovered nearby. During the course of the ensuing investigation, a Westchester County detective, Kenneth Cowan, located a witness named Stephen Crowley, who related to him a statement allegedly made by the defendant at or about the time of the murder, in which the latter claimed to have held the decedent down while another individual, Jordan Marcus, struck him repeatedly with a hammer until

he was dead. Armed with this information, the defendant and Marcus were promptly arrested and charged with the instant crime.

Shortly thereafter, a felony hearing was held in the Yonkers City Court, at which the defendants and their respective attorneys were all in attendance. Also in attendance was Detective Sergeant Kenneth Zajac of the Westchester County Police Department, who had been assigned to transport the prisoners to Yonkers for the hearing and who was present in the courtroom to provide security. Seated four to six feet behind the codefendants, Zajac was present in the courtroom during the testimony of Stephen Crowley, and when the latter recounted defendant's version of the incident, he saw Marcus look directly at the defendant, who was seated next to him, and say, "You told him that", to which the defendant responded by nodding his head in the affirmative.

Defendant's motion to suppress the potential testimony of Detective Zajac regarding this communication was thereafter denied, the motion court holding that Zajac "unavoidably [over]-heard conversations between the defendants and saw their respective conduct, which spontaneously occurred in reaction to Crowley's testimony. There is not the slightest evidence [here] of any police misconduct". Zajac later testified for the People at trial, following which the defendant was convicted, *inter alia,* of murder in the second degree. This appeal followed.

We affirm.

In our view, the motion court did not err in refusing to suppress Zajac's testimony regarding the exchange which occurred between the codefendants at the felony hearing, as it is abundantly clear that this communication was a spontaneous response to the testimony of a People's witness, Stephen Crowley, and was neither induced, provoked nor encouraged by the actions of the police or the District Attorney's office. Moreover, there is nothing in the record which would even tend to suggest that the detective had endeavored, by subtle maneuvering or otherwise, to overhear the challenged communication, as he was legitimately present in the courtroom to provide security, was monitoring the defendants' conduct in pursuance of his security function, was clearly visible at all times to both the defendants and their respective counsel and apparently had never been asked to move. Under such circumstances, no infringement of the defendant's fundamental right to counsel may be discerned (*see, People v Harris,* 57 NY2d 335, 342-343; *People v Harrell,* 87 AD2d 21, 23-24, *affd* 59 NY2d 620; *cf. People v Grimaldi,* 52 NY2d 611).

Turning our attention to the somewhat related question of whether Zajac's testimony was violative of the attorney-client privilege, we need only observe that the communication in question was not made either to counsel or in the furtherance of a common defense. Accordingly, the attorney-client privilege is not implicated (*see, People v Harris, supra,* p 343; *People v Mitchell,* 58 NY2d 368, 373-375; *People v Harrell, supra,* p 25; *United States v McPartlin,* 595 F2d 1321, *cert denied* 444 US 833; *Matter of Grand Jury Subpoena Duces Tecum, Dated Nov. 16, 1974,* 406 F Supp 381). Moreover, communications made in the presence of third parties, whose presence is known to the client, generally are not shielded from disclosure by application of the attorney-client privilege (*see,* Richardson, Evidence § 413 [Prince, 10th ed]; 8 Wigmore, Evidence § 2311 [McNaughton rev]). As the Court of Appeals noted in *People v Harris* (*supra,* p 343), "We see no reason to depart from this general rule simply because one of [the] parties present was a police officer, who, as has been noted, did nothing to purposely overhear the conversation or conceal his presence from [the] defendant." We, thus, conclude that the defendant's attorney-client privileges has not been violated in the instant case, and that Detective Zajac's testimony was properly received.

We have considered the defendant's remaining contentions which have been preserved for our review and find them to be without merit.

TITONE, J. P., MANGANO and BROWN, JJ., concur.

Judgment of the County Court, Westchester County, rendered July 30, 1982, affirmed.