In re FIDELITY GUARANTEE
MORTGAGE CORP.,
Debtor.

**Bankruptcy No. 92–20375–WCH.**

United States Bankruptcy Court,
D. Massachusetts, E.D.

Feb. 3, 1993.

Paul D. Moore, Choate, Hall & Stewart, Boston, MA, for Trustee.

Richard Zielinski, Hill & Barlow, Boston, MA, for Goldstein & Manello.

Bruce Singal, Ferriter, Scobbo, Sikora, Singal, Caruso & Rodophele, P.C., Boston, MA, for Herbert Jacobs and Paula Gagnon.

## OPINION ON DISCOVERY MOTIONS

WILLIAM C. HILLMAN, Bankruptcy Judge.

The facts presented by the parties underlying these motions are not in substantial dispute and are accepted by the Court as its findings of fact, except where otherwise noted.

Because of the expansive nature of the privilege claims made, and the impact those claims have on the administration of Debtor's estate, the Court will provide the parties with a detailed road map of the outer limits of the privilege asserted to guide any further discovery undertaken in this matter.[1]  It is, of course, the claimants' burden to establish the elements of the privilege. *Kolodney v. Old Colony Co-operative Bank (In re Miracle Enterprises, Inc.)*, 40 B.R. 503, 504 (Bankr.D.R.I.1984), and cases cited.

Debtor filed an original petition under Chapter 11 on October 13, 1992. *Docket Entry ("Doc.")* 1.  On that same date it filed an application to employ Janet E. Bostwick ("Bostwick") and the firm of Goldstein & Manello ("G & M") which was granted that day. *Doc.* 86.

On October 27, 1992, Debtor voluntarily converted to Chapter 7. *Doc.* 28.  An interim trustee was appointed on November 2, 1992. *Doc.* 43.

### The G & M Motion

On November 16, 1992, Henry J. Boroff (the "Trustee") moved for a Rule 2004 examination of G & M by and through Bostwick. *Doc.* 71.  Opposition to the motion was filed by Paula Gagnon ("Gagnon") and Herbert M. Jacobs ("Herbert Jacobs"), principals of Debtor (collectively the "Principals"), *Doc.* 98, who requested a hearing. *Doc.* 74.

The Principals alleged that the examination, if allowed, "would be a violation of the privileges applicable to their communications with G & M, including the attorney/client privilege and the joint defense or common interest privilege."  The opposition was supported by affidavits of the Principals. *Doc.* 97.[2]

---

1.  The Court was advised at the hearing that an appeal from this decision is inevitable.

2.  The Principals have made explicit that their submission of the opposition and the affidavits to all motions was not intended to constitute a waiver of any right or privilege available to them.

The essence of the facts alleged in the Principals' opposition was as follows:

1. Each of the Principals was an officer, director, and shareholder of Debtor.

2. It was about September, 1992, when Herbert Jacobs contacted G & M "for the purpose of obtaining legal advice relative to business and financial matters of [Debtor]."

3. "As officers, directors and shareholders [the Principals] believed that G & M would be representing their interests."

4. The Principals had "personal interests in common" with Debtor, including the fact that they had guaranteed certain of Debtor's obligations, and "believed, understood and intended" that their communications with G & M were privileged and confidential.

5. They were never advised "that G & M believed that the privilege relating to their communications was only a corporate privilege which could subsequently be waived by any trustee appointed." They were advised "that any communications were privileged as to [Debtor] only and not to them individually" only after the present proceedings were underway.

6. On the advice of their personal counsel, Bruce A. Singal ("Singal"), they advised G & M about their beliefs as to privilege.

G & M responded to the motion alleging that:

1. "At no point did G & M provide any legal representation to any individual officer, director, shareholder or employee of the Debtor," including the Principals.

2. "At no point did G & M provide any legal representation to Mr. [Herbert] Jacobs or Ms. Gagnon, individually, separate and apart from their association with the Debtor."

3. All communications between G & M and the Principals were "in their capacities as principal operating officers of the Debtor." *Doc.* 75.

The Trustee waived any privilege available to Debtor. *Doc.* 71. *See Commodity*

*Futures Trading Comm'n v. Weintraub,* 471 U.S. 343, 105 S.Ct. 1986, 85 L.Ed.2d 372 (1985).

The motion was granted on November 24, 1992. *Doc.* 95. A notice of appeal was filed by the Principals on December 2, 1992. *Doc.* 112. A stay pending appeal was obtained from the district court pending a hearing on December 11, 1992, at which time the motion for stay was denied and the stay vacated.[3]

The Rule 2004 examination of Bostwick for G & M began on December 22, 1992. Singal was present to represent the interests of the Principals. The transcript of that examination was admitted as evidence at the present hearing on motion of the Trustee. *Doc.* 158, 188.

At the examination, Singal did not explain the claim of privilege beyond that presented to the Court at the hearing on the motion for the examination. *Transcript of Rule 2004 Examination, December 22, 1992 ("T.")* 6. However, his objections demonstrated an extremely broad claim: "I will be requesting that the witness not answer any question which would reveal any conversation or communications between her and any party which I believe would be privileged." T. 12. Counsel for the witness agreed to honor such requests. T. 5.

Singal stated that he would object to any foundation question that entailed "a discussion of substance of any communications." T. 14. He would not allow the witness to address the purpose of a meeting because "her purpose could be the result of or the product of discussions that she had which are privileged." T. 26. He would not agree to a stipulation that any foundation questions would be without prejudice to his clients' rights. T. 15. He would not permit the witness to answer questions concerning conversations which she had with him himself. *E.g.,* T. 23, 24.

The witness was asked, "did you ever consider yourself, or Goldstein & Manello, to be engaged in a joint or common defense

---

**3.** Facts regarding the proceedings in the District Court are taken from the Trustee's present motion and the Principals' response and do not appear on the records of this Court. They were not disputed by any party present at the hearing.

with Mr. Jacobs or Ms. Gagnon?" Singal did not permit an answer. T. 27, 28. He objected to the production of all G & M documents, other than a list of files, and, as to the latter, noted that "the headings should not been deemed to have any significance or any testimonial effect." T. 33.[4] Singal refused to allow the witness to answer any question "to the extent that the answer requires her to relate communications which would suggest who was being represented," T. 40, or "any questions concerning conversations Miss Bostwick had with Jacobs or Gagnon relating to the bankruptcy or the business operations of Fidelity." T. 80.

The witness was permitted to testify that G & M was retained by the Debtor through the Principals, T. 40, but not as to whether G & M ever represented Gagnon or Herbert Jacobs. T. 40, 41. Debtor paid G & M a $65,000 fee. Singal would not permit an answer to the identity of the firm or persons for whom the services were performed. T. 42. The witness was permitted to testify that to her knowledge Gagnon never paid any of her own funds to G & M. T. 42.

One substantive answer involved that statement in Bostwick's affidavit in support of G & M's application for employment that

"[G & M] may, from time to time, represent or have represented persons who may have been, may be or may become creditors of the Debtor...." *Doc.* 86, Aff't ¶ 5.

The witness stated that she did not intend the Principals to be included within the referenced class. T. 54. She made clear that she did not consider G & M to represent the Principals individually. T. 55, 56, 60, 63.

After some initial sparring, the witness was permitted to testify that Herbert Jacobs had been correct when he informed the court, in an affidavit in opposition to the original motion for the Rule 2004 examination, that G & M had never told him,

prior to October 23, 1992, that the privilege was that of the Debtor can could be waived by a trustee. T. 66, 67.

This appears to be the entire substantive content of a deposition which extended over more than three hours.

The Trustee has now moved to compel the desired testimony. This in turn compels an examination of the attorney-client privilege as it applies to the facts here.

■ Because it impedes full and free discovery of the truth, the attorney-client privilege is strictly construed. *Weil v. Investment/Indicators Research & Management, Inc.*, 647 F.2d 18, 24 (9th Cir.1981).

In *Weintraub, supra*, the defendant was the former counsel to a firm of commodity brokers. The plaintiff sought his testimony about various matters concerning the broker, "including suspected misappropriation of customer funds by ... officers and employees, and other fraudulent activities." 471 U.S. at 346, 105 S.Ct. at 1989. Weintraub refused to answer, claiming the attorney-client privilege, even though the Chapter 7 trustee of his former client had waived any claim of privilege.

The issue decided by the Supreme Court was that the Chapter 7 trustee possesses the right to waive the corporate privilege. In reaching that decision, Justice Marshall, speaking for a unanimous court,[5] indicated the scope of the waiver:

"In seeking to maximize the value of the estate, the trustee must investigate the conduct of prior management to uncover and assert causes of action against the debtor's officers and directors. See generally 11 U.S.C. §§ 704(4), 547, 548. It would often be extremely difficult to conduct this inquiry if the former managers were allowed to control the corporation's attorney-client privilege and therefore to control access to the corporation's legal files."

*Id.* at 353, 105 S.Ct. at 1993.

■ Since a corporation can speak and act only through its agents, the Trustee's

---

**4.** The Principals have informed the Court through their post-hearing memorandum that a variety of G & M documents have now been delivered to the Trustee.

**5.** Justice Powell did not participate.

waiver must extend to words and actions of the officers and directors. This would be true even if the issue were not improprieties in the conduct of those human instrumentalities. Any other reading of *Weintraub* is unreasonable. The Principals' argument that *Weintraub* does not "foreclose the possibility that the information may be privileged and withheld from disclosure on other grounds", *Doc.* 98, p. 7, is correct. However, they can prevail under that claim only if they can establish an independent basis for a protective privilege.

■ The existence of the privilege is a factual determination. *United States v. Wilson*, 798 F.2d 509, 512 (1st Cir.1986). The first element to be demonstrated is that the claimant was, or sought to be, a client of the attorney. *United States v. Bay State Ambulance & Hosp. Rental Serv., Inc.*, 874 F.2d 20, 27 (1st Cir.1989).

Nowhere in the arguments or affidavits of the Principals is there any claim or evidence that they, or either of them, were clients of G & M. This alone should be fatal to their claims. *United States v. Keplinger*, 776 F.2d 678, 699–701 (7th Cir. 1985), *cert. denied* 476 U.S. 1183, 106 S.Ct. 2919, 91 L.Ed.2d 548 (1986). However, they make several rather different contentions.

■ First, they appear to be urging that the corporate privilege extends to them because of their community of interest with the Debtor. Second, they contend that G & M had a duty to warn them of the Trustee's waiver powers, and "G & M's failure to advise them should not deprive them of the attorney/client privilege." Finally, they urge an exception to *Weintraub* based upon the "joint defense" privilege.

The first two arguments require little attention. If the privilege claimed is derivative of the corporate privilege, the action of the Trustee in waiving the primary right is fatal to their claim. The argument concerning the failure to warn seems to seek the creation of an attorney-client privilege by estoppel, and the Court has been shown no authority for that principle.

■ The assertion of a "joint defense" privilege invokes the rules adopted by the First Circuit in *Bay State Ambulance, supra.* In brief, that principle protects communications between an individual and an attorney for another when the communications are part of an on-going and joint effort to set up a common defense strategy. *Id.* at 28. The communications must be made in the course of a joint defense effort and designed to further that effort. *Ibid.*

■ Nowhere in the Principals' affidavits is there a statement that a joint effort was undertaken. The following, taken from the Herbert Jacobs affidavit, was adopted by Gagnon. *Doc.* 97, ¶ 2:

"I am represented personally by Bruce A. Singal, Esquire. In the course of that representation, I told Mr. Singal about certain events which had occurred in the past. He advised me to inform G & M as to those past events as they were relevant to Fidelity and the bankruptcy proceedings which were then pending before this Court, and related to interests which Fidelity and I had in common including, but not limited to, my personal guarantee of certain Fidelity obligations."

This assertion takes a step toward establishing a joint defense privilege, but it does not go far enough. While certain information was conveyed to G & M, nothing is said about the communication being "part of a joint defense." *Bay State Ambulance* at 29. Indeed, when Bostwick was asked if her contacts with a Fidelity employee were "in the course of a joint defense effort" Singal prohibited an answer. T. 48. His refusal to permit any response regarding discussions between G & M and the Principals, as noted previously, made it inevitable that the claim of privilege fail.

Having reached this decision, it is not necessary to address the argument of the Trustee that, as between the Trustee and the Principals, the joint defense privilege cannot be used. *Doc.* 148, p. 13.

An order will enter prohibiting G & M, by and through Bostwick, from refusing to answer questions posed at the continued Rule 2004 examination on the basis of attorney-client privilege or joint defense privilege asserted by the Principals and requiring G & M to turn over to the Trustee all files relating to this matter.

*The B & J Motions*

The trustee seeks to conduct an examination of Martin Jacobs, Esq. ("Martin Jacobs"), a member of the firm of Brody & Jacobs ("B & J")[6] under Rule 2004.[7] *Doc.* 169. He has also brought a motion to compel that testimony similar to that involved in the G & M motion. *Doc.* 179.

B & J also represented Debtor, but the Principals contend that there was individual representation as well. They allude to certain pending legal actions in which Debtor and Herbert Jacobs or Gagnon, or both, and named defendants. Further allegation is made that Martin Jacobs has represented Herbert Jacobs in matters not related to Debtor. All of these assertions are supported by the affidavit of Martin Jacobs. *Doc.* 192.

Assuming *arguendo* that the attorney-client relationship existed, that does not necessarily make privileged a particular communication. The relationship does not create an automatic "cloak of protection ... draped around all occurrences and conversations which have any bearing, direct or indirect, upon the relationship of the attorney with his client." *United States v. Goldfarb*, 328 F.2d 280, 281 (6th Cir.1964), *cert. denied* 377 U.S. 976, 84 S.Ct. 1883, 12 L.Ed.2d 746 (1964). The proponent of the privilege must show that it is applicable to the specific communications whose disclosure is sought. It must be asserted against giving particular testimony or producing particular documents. It may not generally be raised against testifying at all. *In re Walsh*, 623 F.2d 489, 493 (7th Cir. 1980), *cert. denied* 449 U.S. 994, 101 S.Ct. 531, 66 L.Ed.2d 291 (1980). The privilege should be asserted when specific questions are put to the witness. *Shiner v. American Stock Exchange*, 28 F.R.D. 34 (S.D.N.Y.1961).

B & J may invoke the privilege as to matters involving its representation of the Principals individually but not as to matters involving B & J's representation of the Principals in their roles as officers and directors of Debtor. *In re Grand Jury Subpoena Duces Tecum (Vesco)*, 391 F.Supp. 1029 (S.D.N.Y.1975). If necessary, the Court will review *in camera* any communication as to which there is a question whether it was personal or corporate in nature. *In re Bevill, Bresler, & Schulman Asset Management Corp.*, 805 F.2d 120, 124–25 (3d Cir.1986).

Subject to these comments, the Trustee's motions for examination under Rule 2004 and to compel that examination are granted.

The Trustee's alternative request that the Court preside over the continued examination of Bostwick and Martin Jacobs is denied as inappropriate.

Orders consistent with this opinion shall enter.

---

6. The firm is now known as Brody, Jacobs & Fitzgerald.

7. It was represented at the hearing that Martin Jacobs is not related to Herbert Jacobs.