**In re MEGAN–RACINE ASSOCIATES, INC., Debtor.**

**NIAGARA MOHAWK POWER CORPORATION, Plaintiff,**

v.

**MEGAN–RACINE ASSOCIATES, INC. and The Federal Deposit Insurance Corporation, as Receiver for the New Bank of New England, N.A., Defendants.**

Bankruptcy No. 92–00860.
Adv. No. 94–70113.

United States Bankruptcy Court,
N.D. New York.

Feb. 1, 1995.

Menter, Rudin & Trivelpiece, P.C. (Jeffrey Dove, of counsel), Syracuse, NY, for debtor.

Swidler & Berlin, Chartered (Michael L. Shor, of counsel), Washington, DC, for Niagara Mohawk.

Bingham, Dana & Gould (Sabin Willett, of counsel), Boston, MA, for FDIC.

House, Golden, Kingsmill & Reiss (Marguerite Kingsmill and W. Richard House, Jr., of counsel), New Orleans, LA, Bond, Schoeneck & King (James Dati, of counsel), Syracuse, NY, for Hudson Engineering.

Goldberg & Fabiano (Harold Goldberg, of counsel), Syracuse, NY, for Creditors Committee.

Michael Collins, Office of U.S. Trustee, Utica, NY.

### MEMORANDUM–DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

STEPHEN D. GERLING, Chief Judge.

Before this Court are two motions by Niagara Mohawk Power Corporation ("NIMO") in the adversary proceeding commenced by NIMO against Megan Racine Associates, Inc. ("Debtor") and Federal Deposit Insurance Corporation ("FDIC"), as receiver for the New Bank of New England, N.A. NIMO's first motion, filed November 29, 1994, sought to compel FDIC to produce allegedly privileged documents pursuant to Federal Rules of Bankruptcy Procedure ("Fed.R.Bankr.P.") 7026 and 7034 which incorporate by reference Federal Rules of Civil Procedure ("Fed. R.Civ.P.") 26 and 34. NIMO's second motion, filed December 13, 1994, sought to compel Debtor to produce allegedly privileged documents also pursuant to Fed.R.Bankr.P. 7026 and 7034.

Both of NIMO's motions were orally argued on the Court's regular motion terms in Utica, New York. NIMO's Motion to Compel FDIC was argued on December 6, 1994 and the Motion to Compel Debtor was argued on December 20, 1994. The parties and Hudson Engineering Corporation, as *amicus curiae,* filed memoranda of law and the respective motions were submitted for decision on December 6, 1994 and December 23, 1994.

As the number of documents in dispute is extensive, the Court afforded the parties additional time to submit privilege logs and/or documents for *in camera* review. For purposes of this Memorandum–Decision, the Court consolidates the two motions pursuant to Fed.R.Bankr.P. 7042(a).

### *JURISDICTIONAL STATEMENT*

The Court has core jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334(b) and 157(a), (b)(1), (b)(2)(B), (C), (H), and (O).

### *FACTS*

Debtor is a corporation engaged in the business of developing, building and operating a 49–megawatt cogeneration facility ("Facility") located at Canton, New York. Debtor's current business consists of the production and sale of both steam and electrical power. On March 17, 1992, Debtor filed a voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code (11 U.S.C. §§ 101–1330) ("Code").

On or about November 21, 1987, Debtor and NIMO entered into a power purchase agreement ("PPA") pursuant to which NIMO purchases electrical power from Debtor. On or about September 7, 1989, Debtor assigned the PPA to the New Bank of New England, N.A., ("Bank") as collateral security for construction financing. FDIC later succeeded to the Bank's rights and allegedly holds a perfected security interest, by way of collateral assignment, in the PPA.

On or about August 1, 1994, NIMO initiated the instant adversary proceeding against defendant and counterclaim plaintiff Debtor and defendant and counterclaim plaintiff FDIC. Arguably, the adversary proceeding goes to the heart of Debtor's Chapter 11 case, as Debtor's hopes of reorganization allegedly hinge on the assumption of the PPA while NIMO seeks to adjust its claim in the event the PPA is determined to be null and void. NIMO alleges that Debtor violated two contract provisions which render the PPA null and void and which entitle NIMO to at least $26,796,917 in damages. *See* NIMO Complaint ¶ 2 and Count III "Wherefore" clause. The first provision re-

quires Debtor to certify that its Facility is a Qualified Facility ("QF") within the meaning of the Public Utility Regulatory Policies Act of 1978 ("PURPA"), 16 U.S.C. § 2601 *et seq.,* and relevant New York State laws. *Id.* The second provision states that should the Facility lose QF status, then, at the option of either party, the PPA shall become null and void. *Id.*

During the course of discovery, NIMO requested the production of documents from both Debtor and FDIC. In responding to certain document requests, both Debtor and FDIC have asserted the existence of privileged documentation by virtue of the "joint defense privilege". Additionally, Debtor has asserted that certain other documents are privileged because they were "prepared in anticipation of litigation." *See* Debtor's Response to NIMO at 2.

Aside from the joint defense privilege, FDIC has asserted that certain documents are privileged by virtue of the attorney-client privilege. FDIC also alleges that some documents are not discoverable because they were prepared by FDIC's expert in anticipation of the present and related litigation. *See* FDIC's Opposition to NIMO at 3. Many of the documents in dispute concern QF matters.

## ARGUMENTS

NIMO contends that the New York State law of privileges applies to the instant proceeding. NIMO argues that the joint defense privilege is not recognized by statute in New York. Nevertheless, NIMO concedes that the privilege exists in New York, but not to the extent that Debtor and FDIC would like to stretch it. *See* NIMO's Response to Debtors's Response at 3.

Debtor and FDIC argue that both New York state law and federal common law recognize the joint defense privilege. FDIC contends that the federal common law of privileges is applicable because PURPA, a federal statute, determines whether the Facility met QF standards. FDIC also argues that because this proceeding arises within the context of a bankruptcy case, which is also governed by a federal statute, the federal common law of privileges applies.

FDIC argues that in order to establish the joint-defense privilege under state or federal law, the party claiming the privilege must show that: (1) the statements were made to its attorney or the other party's attorney or between the attorneys; (2) the statements concerned a matter in which legal advice was sought; (3) the statements were confidential, and; (4) the parties were pursuing a common interest. *See* FDIC's Opposition to NIMO at 7. Debtor echoes FDIC's argument and also asserts that the claimant must show that the statements were designed to further the joint-defense effort and that the privilege has not been waived. *See* Debtor's Response to NIMO at 5. Debtor and FDIC assert that communications between themselves and R.W. Beck & Associates, an engineering firm, for purposes of New York Public Service Commission proceedings, a Federal Energy Regulatory Commission waiver, and a response to NIMO's objection to Debtor's disclosure statement are protected by the joint-defense privilege.

NIMO argues that under New York law the joint-defense privilege has limited application. NIMO asserts that New York courts would not extend the joint defense privilege to cover materials arising under nonlitigative, nonadversarial proceedings. Thus, communications between Debtor, FDIC and R.W. Beck Associates are not shielded by the joint-defense privilege.

## DISCUSSION

Debtor and FDIC allege that many of the disputed documents fall under the joint-defense privilege and have submitted voluminous privilege logs and documents for *in camera* review. In an effort to secure a just, speedy and inexpensive determination of this adversary proceeding, the Court provides the parties with a road map for the requirements of the joint-defense privilege. With the aid of this Memorandum–Decision, the Court affords the parties further opportunity to confer in a good faith effort to resolve their disputes concerning discovery. *See* Fed. R.Civ.P. 26 and 37(a)(2). Any disputes that remain after such good faith effort, shall be submitted to the Court for determination.

## A. CHOICE OF LAW ISSUE

### 1. Vertical Choice of Law: Federal Law or State Law

■ Congressional disagreement over the concepts of federalism and privileges eventually led to the adoption of Federal Rules of Evidence 501 ("FRE").[1] FRE 501 requires courts to apply the federal common law of privileges except "in civil actions and proceedings, with respect to an element of a claim or defense as to which State law supplies the rule of decision, the privilege ... shall be determined in accordance with State law." FRE 501.

It is well accepted that where the substantive law being applied is a federal statute then the state law of privileges does not apply. Although bankruptcy courts function under the umbrella of a federal statute, they are frequently required to determine the validity of state claims. Courts have applied the state law of privileges when confronted with a proceeding arising within a bankruptcy case and that proceeding concerns state law. See In re Tidewater Group, Inc., 65 B.R. 179, 181 (Bankr.N.D.Ga.1986).

FDIC relies on In re Muscatell, 93 B.R. 268, 271 (Bankr.M.D.Fla.1988), in arguing that, "Generally, all issues arising in an adversary proceeding in a Bankruptcy case are governed by federal law." See FDIC's Opposition to NIMO at n. 2. FDIC's reliance on In re Muscatell is misplaced. The Muscatell court was concerned with a traditional question of federal bankruptcy law: whether the debtor was entitled to a general bankruptcy discharge. See In re Muscatell, supra, 93 B.R. at 271. The Muscatell court pointed out that, "Inasmuch as the issues involved in this adversary proceeding have absolutely nothing to do with state law to which state law applies the rule of decision,

there is hardly any question that the privilege recognized by state law cannot be invoked ..." Id. (emphasis added).

■ The matter before this Court, unlike in In re Muscatell, concerns an adversary proceeding dealing with issues where state law provides the rule of decision. The main questions are whether Debtor violated the PPA by falling below the required QF standards and whether Debtor and FDIC have a defense to the alleged violation. These are issues where state law provides the rule of decision.[2] Therefore, state law privileges apply to the instant case.

### 2. Horizontal Choice of Law

■ The Court will decide the case as would a state court in this district and will consequently apply New York's choice-of-law-rules. See Woodling v. Garrett Corp., 813 F.2d 543, 551 (2d Cir.1987). The PPA contains a choice of law clause which deems New York as the governing state. See NIMO Complaint, Exhibit "A" PPA at ¶ 17. Following New York's autonomy principle, this Court honors the parties' choice of law insofar as matters of substantive law are concerned. Joy v. Heidrick & Struggles, Inc., 93 Misc.2d 818, 821, 403 N.Y.S.2d 613, 614 (N.Y.City Civ.Ct.1977). In addition, because FDIC, Debtor and NIMO addressed only New York law when state law was argued, the parties are apparently in agreement that if state law is to apply to this case, it will be New York law.

## B. INTRODUCTION

A fundamental theme running through American jurisprudence is that full disclosure is to be encouraged because it facilitates the uncovering of the truth. See McCormick, Evidence, at 268–269 (4th ed. 1992). As

---

1. The Federal Rules of Evidence are made applicable to actions in this Court by FRE 101 and 1101(a) and Fed.R.Bankr.P. 9017.

2. FDIC argues in a footnote that the federal law of privileges applies because PURPA, a federal statute, establishes the applicable standards for QF certification. See FDIC's Opposition to NIMO at n. 2. The Court finds that establishing whether Debtor met QF standards is an item of proof culminating in a state law claim (i.e. viola-

tion of the PPA) and as such state law privileges apply. The Court's conclusion is based on the legislative history of FRE 501 which states that, "If an item of proof tends to support or defeat a claim or defense, or an element of a claim or defense, and if state law supplies the rule of decision for that claim or defense, then state privilege law applies to that item of proof." See Wright & Graham, Federal Practice & Procedure, § 5434 at 860 (1980) (citing Conference Report).

Judge Learned Hand stated, "The suppression of truth is a grievous necessity at best ... it can be justified at all only when the opposed private interest is supreme." *McMann v. Securities and Exchange Commission,* 87 F.2d 377, 378 (2d Cir.1937), *cert. denied* 301 U.S. 684, 57 S.Ct. 785, 81 L.Ed. 1342 (1937). At times, however, the policy of uncovering the truth yields to the commitment to protect interests and relationships which are regarded of sufficient social importance. *See* McCormick, *supra,* at 269. Thus the law has carved out privileges and immunities on the assumption that they preserve the vitality of the adversary system by fostering, among other things, complete disclosure to one's attorney and the adequate preparation of a case. *See e.g. In re Sealed Case,* 676 F.2d 793, 825 (D.C.Cir.1982).

However, courts have generally followed the reasoning of Dean Wigmore and confined privileges to a narrow and limited enclave. *See In re Grand Jury Subpoena Duces Tecum,* 391 F.Supp. 1029, 1033 (S.D.N.Y.1975). A narrow interpretation of privileges rests on the assumption that while privileges have some social good, there is the concern that they may be used as a device for cover-ups.

When applied in the bankruptcy context, privilege questions are made slightly more difficult. The Code's interest in full disclosure is based on the premise that disclosure tends to militate against the abuse of the bankruptcy process and aids in the discovery of the problems which precipitated the debtor's decline. A cursory examination of the Code reveals a strong commitment to the duty to disclose. For example, discovery in the bankruptcy context is not limited to that discovery available in connection with a particular matter that is the subject of actual litigation. *See e.g.* Fed.R.Bankr.P. 2004. The Code's reluctance to frustrate disclosure is also evident in Code § 542(e) which was intended to restrict, not expand, the ability of accountants and attorneys to withhold information from the trustee. *In re Commodity*

*Futures Trading Com'n v. Weintraub,* 471 U.S. 343, 350, 105 S.Ct. 1986, 1992, 85 L.Ed.2d 372 (1985).[3]

## C. JOINT–DEFENSE PRIVILEGE [4]

### 1. *New York Law*

■ Conscious of the above policies and considerations, the Court proceeds with an analysis of the joint-defense privilege under New York law. Many of New York's privileges are codified in Article 45 of New York Civil Practice Law and Rules ("NYCPLR"). New York courts recognize that there is no privilege in the absence of statute. *See Application of Heller,* 184 Misc. 75, 53 N.Y.S.2d 86 (N.Y.Sup.Ct.1945).

NIMO argues that New York law "does not recognize a free-standing 'common interest privilege.'" *See* NIMO Memo in Support of Motion to Compel Megan–Racine at n. 2. While there is no New York statute that recognizes the common interest privilege as a distinct privilege, most commentators and courts view it as an extension of the attorney-client privilege or work-product doctrine. *See* NYCPLR § 4503, Commentary at c;4503:3; *Chahoon v. The Commonwealth,* 62 Va. 822 (Va.1871); *but see* Susan K. Rushing, *Separating the Joint Defense Doctrine from the Attorney–Client Privilege,* 68 Tex.L.Rev. 1273 (1990).

■ Although Debtor and FDIC were unable to cite to any New York cases *applying* the joint-defense privilege, there is case law *recognizing* the privilege *in dicta. See People v. Osorio,* 75 N.Y.2d 80, 85, 550 N.Y.S.2d 612, 615, 549 N.E.2d 1183, 1186 (1989); *People v. Borcsok,* 107 A.D.2d 42, 485 N.Y.S.2d 766, 767 (N.Y.App.Div.1985); *People v. Calandra,* 120 Misc.2d 1059, 1061, 467 N.Y.S.2d 141 (Sup.Ct.N.Y.City 1983). The paucity of decisional law, however, does not prevent this Court from prophesying how New York courts would apply the joint-defense privilege. *See* Wright and Graham,

---

**3.** The Code, however, is not completely hostile toward privileges. *See e.g.* Code § 344 legislative history.

**4.** Courts and commentators use the terms "joint-defense privilege," "common interest privilege"

and "pooled information situation" interchangeably. Perhaps the best term, as it is the least misleading, is "common interest exception to waiver."

*supra,* § 5432 at 852 n. 50 (citations omitted). Courts often rely on federal precedents where state courts have recognized the privilege, but there are no decisions on point. *See e.g. Martin v. American Employers' Ins. Co.,* 115 F.R.D. 532, 534–535 (D.C.Miss.1987).

■ The New York courts recognizing the joint-defense privilege have done so within the context of criminal cases. *But see Magnaleasing, Inc. v. Staten Island Mall,* 76 F.R.D. 559, 563 n. 6 (S.D.N.Y.1977) (civil action where court assumed New York law would recognize the joint-defense privilege). Although the joint-defense privilege is developed within the context of criminal cases, its purpose is to encourage interparty communications such that the parties receive effective legal representation as well as to facilitate a just determination of the case. *See United States v. McPartlin,* 595 F.2d 1321, 1336 (7th Cir.1979), *cert. denied* 444 U.S. 833, 100 S.Ct. 65, 62 L.Ed.2d 43 (1979). As these purposes are common to civil and criminal cases, the Court does not find it anomalous to extend New York's recognition of the joint-defense privilege to civil cases. *See* Patricia Welles, *A Survey of Attorney–Client Privilege in Joint Defense,* 35 U.Miami L.Rev. 321, n. 28.

### 2. Elements of Joint–Defense Privilege

■ Generally, when a communication between a client and an attorney occurs in the presence of third parties, the attorney-client privilege is waived. *AMBAC Indemnity Corp. v. Bankers Trust Co.,* 151 Misc.2d 334, 573 N.Y.S.2d 204, 208 (1991). Similarly, the general rule for the work-product doctrine is that it is deemed waived when an attorney reveals his materials prepared in anticipation of litigation to third parties. *See In re Crazy Eddie Securities Litigation,* 131 F.R.D. 374, 379 (E.D.N.Y.1990) (stating that if counsel shares work-product with an adversary to encourage settlement, the protec-

tion of the doctrine is waived). The joint-defense privilege acts as an exception to these general waiver rules in order to facilitate cooperative efforts among parties who share common interests.

■ The joint-defense privilege can only exist where there is an applicable underlying privilege, such as the attorney-client privilege or the work-product doctrine. *See generally Matter of Grand Jury Subpoena Duces Tecum, Nov. 16, 1974,* 406 F.Supp. 381, 387–388 (S.D.N.Y.1975). The Court assumes, for the limited purpose of determining the parameters of the joint-defense privilege in New York, that the documents at issue are protected by a valid underlying privilege.[5] As there is no independent statutory provision that recognizes the joint-defense privilege, it is axiomatic that an interpretation of the joint-defense privilege conform with the purposes of its underlying privilege whenever possible.[6]

### a. UNDERLYING PRIVILEGE: ATTORNEY–CLIENT

#### (i) Confidentiality

■ It is well established that confidentiality lies at the heart of the attorney-client privilege. Where a client has no expectation of confidentiality at the time of the communication, the claim of privilege will be inapplicable. *See e.g. People v. Osorio, supra,* 75 N.Y.2d at 84, 550 N.Y.S.2d at 615.

■ In keeping with this principle, the Court finds that the joint-defense privilege is only applicable where the party asserting it can demonstrate an agreement between the parties privy to the communication that such communication will be kept confidential. *See In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3rd Cir.1986); *Matter of Grand Jury Subpoena, supra,* 406 F.Supp. at 386. The

---

**5.** The Court reiterates that the instant Memorandum–Decision does not dispose of the issues as to whether the application of the underlying attorney-client privilege or the work-product doctrine are valid with respect to each document which is claimed to be privileged.

**6.** The Court recognizes that the joint-defense privilege cannot always be interpreted to con-

form to the purposes of its underlying privilege. For example, one of the purposes of the attorney-client privilege is to "entice clients to divulge information to their own lawyers" while the joint-defense privilege is meant to encourage communications with third parties having a common interest. *See* Rushing, *supra,* at 1279–1280.

requisite agreement of confidentiality, however, is inferable from the circumstances. *See People v. Fentress,* 103 Misc.2d 179, 425 N.Y.S.2d 485 (1980). Thus, it is incumbent on Debtor and FDIC to demonstrate that prior to divulging the communication to each other, each party to the communication had agreed to pursue a joint-defense strategy and had agreed that such communications would be kept confidential.

### (ii) The Participants

■ Generally, the attorney-client privilege shields certain communications between the attorney and the client. The joint-defense privilege widens this sphere. The most common application of the privilege is when attorneys representing different parties pool their information together. In *Hunydee v. United States,* 355 F.2d 183 (9th Cir.1965), the joint-defense privilege was interpreted so as to shield statements made in furtherance of a common defense by a defendant in front of his attorney, a codefendant and the codefendant's attorney. Courts and commentators have suggested that the *Hunydee* reasoning can be extended such that even inter-client communications in the presence of their attorneys are protected. *See Matter of Grand Jury Subpoena, supra,* 406 F.Supp. at 388.

■ The Court notes, however, that the joint-defense privilege, like the attorney-client privilege in New York, does not extend to communications made to representatives of quasi-legal professions unless such representatives act as *agents* for the attorney.[7] *See People v. Doe,* 99 Misc.2d 411, 416 N.Y.S.2d 466 (1979); *In re John Doe Corp.,* 675 F.2d 482, 488–489 (2d Cir.1982) (reports prepared by corporation's legal department were not afforded attorney-client privilege where the reports had been disclosed to an accounting firm in connection with a 1977 audit and to an attorney for an underwriter in connection with a 1978 public offering of Doe Corp. securities); *Permian Corp. v.*

*United States,* 665 F.2d 1214, 1219–1220 (D.C.Cir.1981) (client's disclosure to SEC staff destroys confidentiality and results in waiver of privilege). However, statements made to an *agent* of the co-defendant's attorney in the absence of the speaker's attorney are protected. *See United States v. McPartlin, supra,* 595 F.2d at 1321. Therefore, the party asserting the joint-defense privilege must demonstrate that the communications were made to his attorney or the other party's attorney or between attorneys or to an agent of the attorney for the purpose of seeking legal advice. *See also* FDIC's Opposition to NIMO at 7.

### (iii) Interests of the Participants

■ In recognizing the exigencies of the joint-defense privilege, courts have not required a total identity of interest among the participants. The privilege applies when a limited common purpose necessitates disclosure to certain parties. Thus, even where a later law-suit is foreseeable between the co-defendants that does not prevent them from sharing confidential information for the purpose of a common interest. *See Matter of Grand Jury Subpoena, supra,* 406 F.Supp. at 392.

■ In determining the extent of the "common interest" required to invoke the joint-defense privilege, the Court notes that a consequence of the privilege is that the participants can preclude each other from unilaterally waiving it. *See Western Fuels Ass'n Inc. v. Burlington N.R.R.,* 102 F.R.D. 201, 203 (D.Wyo.1984). The joint-defense privilege cannot be waived unless all the parties consent or where the parties become adverse litigants. *See e.g. Matter of Grand Jury Subpoena,* 406 F.Supp. at 381.

■ Bankruptcy cases, by their very nature, involve common commercial interests. Chapter 11, after all, is a forum where a debtor and its creditors have a common in-

---

**7.** The Court notes that under the doctrine of "subject matter waiver," disclosure of specific communications *may* also lead to the disclosure of all other communications relating to the subject matter. This doctrine is applicable where the privilege holder has made some affirmative use of the disclosed material and it would be patently unfair to uphold a claim of privilege. *See e.g. In re von Bulow,* 828 F.2d 94, 101–102 (2d Cir.1987); *United States v. Aronoff,* 466 F.Supp. 855, 862–863 (S.D.N.Y.1979).

terest in maximizing the value of the estate. Following Wigmore's policy that a privilege should "be strictly confined within the narrowest possible limits," the Court finds that the joint-defense privilege should be limited to those who share more than a common commercial interest, as that is not a discriminating factor in the bankruptcy context. J. Wigmore, *Evidence*, § 2291 at 554 (McNaughton rev. ed. 1961).

■ The power to restrict communications by another party is a powerful weapon which may frustrate the Code's commitments to full disclosure and expediency. Arguably, in the bankruptcy context, the joint-defense privilege could lead to strong-arming and collusive efforts which frustrate the Code's fundamental purposes. Thus, the Court finds that although total identity of interest is not necessary, the parties asserting the privilege must have a common *legal* interest. A common *legal* interest exists where the parties asserting the privilege were co-parties to litigation or reasonably believed that they could be made a party to litigation.[8] *See e.g. Matter of Grand Jury Subpoena, supra,* 406 F.Supp. at 387 (communications between potential codefendants privileged).

*In re Kaiser Steel Corp.,* 84 B.R. 202 (Bankr.D.Colo.1988), a case that Debtor relies heavily on, provides support for the Court's requirement of a common legal interest. In *In re Kaiser Corp.,* the Unsecured Creditors Committee obtained court approval to engage the accounting firm of Coopers & Lybrand to provide accounting services for the Committee. Among the work performed by Coopers & Lybrand was an analysis of prepetition transfers by the debtor in connection with a leveraged buyout. Thereafter, the debtor and the Committee became involved as party-plaintiffs in adversary proceedings concerning fraudulent transfer liti-gation. The Committee, which was subsequently dismissed from the proceedings, provided the debtor with the analysis performed by Coopers & Lybrand. The *Kaiser* court held that the Coopers & Lybrand analysis was privileged because "the Committee and the debtor have common interests." *Id.* at 205. The court stated that, "Each [the Committee and the debtor] has an *obligation* to seek to maximize the assets in the debtor's estate. Had the debtor failed and refused to file the present cases, *the Committee could have sought separate authorization* to do so ..." *Id.* (emphasis added).

A careful reading of *In re Kaiser* reveals that the "common interest" that the debtor and the Committee shared was "legal" in nature. The debtor and the Committee shared a *duty* to maximize the debtor's estate and not merely a common commercial interest. Further, the Committee reasonably believed that it could be, and it in fact became, a party to the litigation.

(iv) Nature of Communication

■ The parties asserting the privilege must also demonstrate that each communication was made in the course of the joint-defense effort and was designed to further that effort. *See In re Bevill, supra,* 805 F.2d at 126. This requirement parallels the burden for the proponent of the attorney-client privilege who must show that it is applicable to the specific communications whose disclosure is sought. *See generally People v. Mitchell,* 58 N.Y.2d 368, 461 N.Y.S.2d 267 (1983).

b. UNDERLYING DOCTRINE: WORK–PRODUCT [9]

(i) Confidentiality

■ The work-product doctrine protects such items as "interviews, statements,

---

8. The Court is cognizant of the argument that since the attorney-client privilege extends to any communication regardless of the presence or absence of litigation, the joint-defense privilege should have the same parameters. *See SCM Corp. v. Xerox Corp.,* 70 F.R.D. 508, 513–514 (D.Conn.1976). However, as noted above, the joint-defense privilege may not always conform with the purposes of the underlying privilege. *See supra* text at 12–13 and accompanying notes.

9. For purposes of FRE 501, "privileges" are to be determined pursuant to federal standards. *See* Wright & Graham, *supra,* § 5432 at 851. Although there is conflicting authority, the Court does not consider the "work-product doctrine" a privilege under the federal standards and as such relies on Fed.R.Civ.P. 26(b)(3). The Court finds further support for its decision from the fact that New York courts rarely rely on the ill-defined work-product doctrine under NYCPLR 3101(c);

memoranda, correspondence, briefs, mental impressions, [and] personal beliefs." *Hickman v. Taylor*, 329 U.S. 495, 510, 67 S.Ct. 385, 393, 91 L.Ed. 451 (1947). The purpose of the doctrine is to encourage careful and thorough preparation by counsel and it provides him or her with a "certain degree of privacy, free from necessary intrusion by opposing parties and their counsel." *Id.* at 510–511, 67 S.Ct. at 393. In conforming with the purpose of the work-product doctrine, the Court requires the parties asserting the joint-defense privilege to demonstrate that they shared a common legal interest and that prior to the work-product communications the parties had agreed to pursue a joint-defense strategy and to keep their work-product communications confidential.

### (ii) In Anticipation of Litigation

 Fed.R.Civ.P. 26(b)(3) provides that documents "prepared in anticipation of litigation by or for the party may not be obtained by one's opponent through discovery without a showing of substantial need or undue hardship in obtaining the substantial equivalent of the document." Consequently, information shared among co-parties in a joint representation context will only be protected under the work-product doctrine if those documents were prepared in anticipation of litigation. Thus, the parties asserting the privilege must demonstrate that a substantial probability of litigation existed at the time the material sought to be protected was created. *See Weil Ceramics & Glass, Inc. v. Work*, 110 F.R.D. 500, 505 (E.D.N.Y.1986) (citations omitted). A determination of whether there was a substantial probability of litigation is fact specific. *Id.*

 The Court notes that the work-product doctrine provides a qualified privilege for materials prepared in anticipation of *litigation*. *See* Fed.R.Civ.P. 26(b)(3). As such, materials prepared for administrative litigation or judicial proceedings maybe protected under Fed.R.Civ.P. 26(b)(3) and the joint-defense privilege. However, materials assembled in the ordinary course of business, or pursuant to public requirements unrelated to litigation, or for other nonlitigation purposes are not shielded by the work-product doctrine's qualified immunity and consequently are not protected by the joint-defense privilege. *See* Fed.R.Civ.P. 26(b)(3) Advisory Committee notes; *In re Minebea Co., Ltd.*, 143 F.R.D. 494, 499 (S.D.N.Y.1992) (work-product doctrine does not protect material prepared for prosecution of patent application because it is a non-adversarial, *ex parte* proceeding); *Goosman v. A. Duie Pyle, Inc.*, 320 F.2d 45, 52 (4th Cir.1963) (written statements made pursuant to Interstate Commerce Commission regulations were not protected). Thus, self-serving disclosure of documents to a government agency charged with enforcing regulatory policy will not be protected under the work-product doctrine or joint-defense privilege.

### (iii) Duration of Privilege

 One of the purposes of the work-product doctrine is to implement the adversarial process and foster the opportunity for each attorney to prepare his case. *See In re Crazy Eddie Securities Litigation, supra*, 131 F.R.D. at 379. Thus, the privilege only protects information "against opposing parties, rather than against all others outside a particular confidential relationship." *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299 (D.C.Cir.1980).

 The Court is cognizant of the fact that courts are split into three major positions as to whether materials prepared in anticipation of a prior litigation will be protected in a subsequent litigation. *See* Scott N. Stone & Ronald B. Liebman, *Testimonial Privileges* 180–182 (1983) (citations omitted). The Second Circuit admonishes that in determining whether work-product protection is limited to materials prepared for the litigation in which the discovery is sought, courts must not defeat the broad purposes of the doctrine as set forth by the Supreme Court in *Hickman*. *See Republic Gear Company v. Borg–Warner Corporation*, 381 F.2d 551, 557 (2d Cir.1967). Thus, this Court adopts the view that documents prepared for one

rather, when New York courts seek to exclude material they often grant *conditional immunity* pursuant to NYCPLR 3101(d). *See* NYCPLR § 3101, Commentary at c;3101:28.

litigation, which were or would have been shielded, have the same protection in a second litigation if the two litigations are *closely related* in parties or subject matter. *See Hercules Inc. v. Exxon Corp.*, 434 F.Supp. 136, 153 (D.Del.1977) (citing *Republic Gear Company v. Borg–Warner Corporation, supra,* 381 F.2d at 551). Thus, the parties asserting the work-product doctrine and joint-defense privilege in order to protect documents prepared in anticipation of prior litigation must show how, and to what extent, the prior litigation is related to the present case.

### (iv) Nature of Communication

▇ The parties asserting the work-product doctrine and the joint-defense privilege must also show whether the material sought to be protected is "ordinary" work-product, that is, documents not implicating the mental impressions, conclusions, opinions or legal theories of an attorney or whether the material is "opinion" work-product. The Court notes that "ordinary" work product is discoverable if the party seeking discovery demonstrates a "substantial need of the materials … and the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R.Civ.P. 26(b)(3). "Opinion" work-product, however, enjoys "a near absolute immunity and can be discovered only in very rare and extraordinary cases …" *P. & B. Marina, Ltd. Partnership v. Logrande,* 136 F.R.D. 50, 57 (E.D.N.Y.1991) (quoting *In re Murphy,* 560 F.2d 326, 336 (8th Cir.1977)); *In re John Doe Corp., supra,* 675 F.2d at 492.

### D. CONCLUSION

▇ As noted above, it is a fundamental rule that the public is entitled to every person's evidence. *See supra* text at 8; *Garner v. Wolfinbarger,* 430 F.2d 1093, 1100 (5th Cir.1970), *cert. denied* 401 U.S. 974, 91 S.Ct. 1191, 28 L.Ed.2d 323 (1971) (citing 8 Wigmore, *Evidence,* § 2192 at 70). However, certain communications which are thought to improve legal representation and facilitate a more effective administration of justice are protected by the cloak of privilege. In an effort to balance these competing policies, the Court has provided the parties with guideposts that expands the law of privileges in New York but also places a heavy burden on the claimant.

▇ With this Memorandum–Decision in hand, the Court affords the parties a further opportunity to make a good faith effort to resolve discovery disputes. *See* Fed.R.Civ.P. 26 and 37. If any documents remain in dispute following such effort, the claimants of the privilege shall submit those documents in question for *in camera* review. *See In re Federal Skywalk Cases,* 95 F.R.D. 477, 478 (W.D.Missouri 1982) (citations omitted); *Spectrum Systems International Corp. v. Chemical Bank,* 78 N.Y.2d 371, 378, 575 N.Y.S.2d 809, 814, 581 N.E.2d 1055, 1060 (1991). Any remaining disputed documents must be submitted to the Court within twenty (20) days of the date of this order.[10]

▇ It is, of course, the claimants burden to establish the elements of an alleged privilege. *See In re Fidelity Guarantee Mortg. Corp.,* 150 B.R. 864, 865 (Bankr. D.Mass.1993). Thus, the claimants shall also submit an *explanation* of *each* document for which a privilege is claimed identifying the document by: (1) content; (2) date; (3) preparer; (4) parties privy to the document and; (5) position of preparer and position of parties privy to the document (e.g. (name of preparer) is counsel for (name of corporation); the communication was shared with (name of person) and he/she is counsel for (name of corporation)). Where the privilege claimed is joint-defense with the underlying privilege being *attorney-client,* the *explanation* accompanying *each* document shall also demonstrate: (6) that the underlying privilege is applicable to the document; (7) that there was an agreement, made prior to the communication, between the parties to keep the communication confidential; (8) that the parties privy to the document shared a common legal interest and; (9) that the document was made in the course of the joint-

---

**10.** The Court affords the parties 20 days in an effort to preserve the parties' First Amended Joint Stipulated Order of Consolidation and Pre-trial Order, which requires the trial to begin on March 30, 1995.

defense and that the document was designed to further the joint-defense effort. Where the privilege claimed is joint-defense with the underlying doctrine being *work-product,* the *explanation* accompanying *each* document shall also demonstrate: (6) that the underlying doctrine is applicable to the document as "ordinary" work-product or "opinion" work-product; (7) that there was an agreement, made prior to the communication, between the parties to keep the communication confidential; (8) that there was an agreement to pursue a joint-defense strategy; (9) that at the time the document was prepared there was a substantial probability of litigation and; (10) that if the document was prepared in anticipation of prior litigation, how the previous litigation is closely related in parties or subject matter to the present proceeding. An *explanation* shall be attached to each document and will also be reviewed *in camera.* The parties may submit additional memoranda within the twenty day period.

Accordingly, it is hereby

ORDERED that in accord with this Memorandum–Decision the parties make a good faith effort to resolve their discovery disputes pursuant to Fed.R.Civ.P. 26 and 37 as made applicable to adversary proceedings in this Court by Fed.R.Bankr.P. 7026 and 7037; and it is further

ORDERED that any documents that remain in dispute shall be submitted with an attached explanation, as set forth herein, within twenty (20) days of the date of this order.