OPINION OF THE COURT
Herbert Kramer, J.
What constitutes a “joint defense” in a civil action entitling the parties to invoke the joint defense privilege to protect documents from disclosure under New York State law?
*332 In this multimillion dollar construction contract litigation poised on the eve of trial,[1] plaintiff owner presses its earlier demands for hundreds of documents for which a claim, inter alia, of joint defense privilege has recently been made on behalf of the defendant coventurer, engineering companies.[2]
“The principle underlying the ‘common interest’ [or joint defense] privilege is that it is an exception to the traditional rule that the presence of a third party, not an agent or employee of counsel, at a communication between counsel and a client is sufficient to deprive the communication of the confidentiality which is one of the pillars of the privilege * * * The New York criminal cases, following Federal authorities * * * have accepted a limited exception to the ‘third person present’ rule where the persons present are criminal defendants and their counsel engaged in preparing a defense to a pending criminal charge against each of them * * * The theory of those cases is that an extension of the privilege is necessary to permit a joint defense to the common charges and that a defendant and counsel have the expectation that their confidences will be kept by the codefendants and their counsel.
*333 “The New York cases have not clearly extended the common defense exception to civil cases. The Federal courts that have applied the New York rules of evidence have opined that the New York courts would probably extend the ‘common interest’ privilege to civil cases * * * This court agrees with that conclusion. The principles which warrant an extension of the privilege to codefendants facing criminal charges apply with equal force to those parties facing common problems in pending or threatened civil litigation. * * * The law is well settled [however] that the mere existence of * * * cooperation agreements * * * cannot create a privilege that otherwise does not exist. A private agreement by the parties to protect communications cannot create a privilege.” (Aetna Cas. & Sur. Co. v Certain Underwriters at Lloyd’s London, 176 Misc 2d 605, 611-613 [Sup Ct, NY County 1998], affd 263 AD2d 367 [1st Dept 1999].)
The documents submitted for in camera review for which this privilege is claimed provide an opaque receptacle for discussions centering upon a series of complaints made by one of the coventurers against the work done by another in the instant project. It is quite apparent that the privilege was invoked to shield this internecine battle from view and prevent it from coming to light in the course of the instant suit. The communications between the parties were thus not made for the purpose of mounting a joint defense against the owner but were made for the purpose of analyzing the claims they had against each other. The foundation of the agreement reached between them involved their mutual interest in keeping their complaints against one another concealed.
“A fundamental theme running through American jurisprudence is that full disclosure is to be encouraged because it facilitates the uncovering of the truth. See McCormick, Evidence, at 268-269 (4th ed. 1992). As Judge Learned Hand stated, ‘The suppression of truth is a grievous necessity at best * * * it can be justified at all only when the opposed private interest is supreme’ * * * [C]ourts have generally followed the reasoning of Dean Wigmore and confined privileges to a narrow and limited enclave * * * A narrow interpretation of privileges rests on the assumption that while privileges have some social good, there is the concern that they may be used as a device for cover-ups.” (In re Megan-Racine Assoc., Inc., 189 BR 562, 569-570 [ND NY 1995].)
This court has considered a plethora of federal decisions in this area for the purposes of fleshing out what would be New *334 York’s view under the facts presented in this case. (E.g., Matter of Bevill, supra; United States v Bay State Ambulance & Hosp. Rental Serv., Inc., 874 F2d 20 [1st Cir 1989]; United States v Schwimmer, 892 F2d 237 [2d Cir 1989]; United States v Keplinger, 776 F2d 678 [7th Cir 1986].) This court believes that the joint defense doctrine should protect statements made for a common purpose related to the defense of all concerned parties rather than serve to facilitate an attack by one against the other. There must be a substantial showing by parties attempting to invoke the protections of the privilege of the “ ‘need for a common defense [as opposed to the mere existence of a] common problem.’ Medcom Holding Co. v. Baxter Travenol Laboratories, 689 F. Supp. 841, 845 (N.D. Ill. 1988) * * * [For] ‘the joint defense privilege arises only where the common interest of the parties relates to the joint defense of existing or impending litigation.’ [Metro Wastewater Reclamation Dist. v Continental Cas. Co., 142 FED 471,] 479 n 7.” (United States v Weissman, 1996 WL 737042, *10, 1996 US Dist LEXIS 19067, *25-26 [SD NY 1996].)
Accordingly, it is hereby ordered that counsel for Spie provide plaintiff with all of those documents in the privilege log for which a claim of joint defense privilege has been made and which have been directed to, executed by or shared with another member of the joint venture group and/or their counsel and/or counsel for the joint venture.[3] These documents must be furnished to counsel no later than 5:00 p.m. on Wednesday, December 18, 2002. Any documents for which the joint defense privilege has been raised, but for which counsel for Spie wish to argue that the “third person present” rule should not apply — because of the factual setting in which the document was created or communicated — may be forwarded instead to the court for its further consideration no later than December 18, 2002. All of the other documents for which claims of privilege other than the joint defense privilege have been made are to be separately designated and forwarded to this court on December 18, 2002.

. The first phase of the trial in this matter is scheduled for January 2, 2003.

. On September 3, 2002, in response to plaintiffs motion to compel the production of certain documents in the possession of Spie Batignolles, S.A. and Spie Enertrans S.A. (hereinafter, Spie), this court, inter alia, ordered the production of the documents within 30 days of service of a copy of the order with notice of entry and instructed that any documents for which a privilege was claimed should be submitted to chambers for in camera inspection.
As of November 15th this court had once again ordered the submission of the documents for in camera review together with an appropriately detailed and amended privilege log. On November 18th eight boxes of documents for which a claim of privilege was being made were submitted to chambers.
This court began its review of the documents, and on November 20th sent a letter to the parties informing them that it has come to the conclusion that issues of law and fact exist with respect to the joint defense privilege asserted for many of the documents listed in the privilege log. This court sought briefing on the question of whether the setting in which these documents were created and the intention of the framers met the requisite standards for the establishment of such privilege. (See e.g. Matter of Bevill, Bresler & Schulman Asset Mgt. Corp., 805 F2d 120 [3d Cir 1986].)
Counsel for Spie indicated that the documents forwarded to the court were originals and that the firm had not had the opportunity to make copies for themselves. Accordingly, they requested that the eight boxes of documents be returned to them, which request was accommodated. Counsel for Spie briefed the issues, but has not as of yet returned the documents. Counsel for Spie by notice of motion dated December 11, 2002 has moved for an extension of time until January 25, 2003 to supplement its briefing of these issues. That motion is denied.

. “The joint-defense privilege can only exist where there is an applicable underlying privilege, such as the attorney-client privilege or the work-product doctrine.” (In re Megan-Racine Assoc., supra, 189 BR at 571.) For the purposes of this order, and only for the purposes of this order, this court assumes that these documents are protected by a valid underlying privilege which has been vitiated by the “third person present” rule. Accordingly, it is only those documents that fall within that factual nexus which must be turned over under this order.