In re KAISER STEEL
CORPORATION, Debtor.

KAISER STEEL CORPORATION,
et al., Plaintiffs,

v.

Joseph A. FRATES, et al., Defendants.

KAISER STEEL CORPORATION,
et al., Plaintiffs,

v.

Monty H. RIAL, et al., Defendants.

Bankruptcy No. 87 B 1552 E.
Adv. Nos. 87 E 135, 87 E 437.

United States Bankruptcy Court,
D. Colorado.

March 28, 1988.

---

H. Thomas Coghill, David J. Richman, Corin Wm. McIlnay, Coghill & Goodspeed, P.C., Denver, Colo., Edward M. Glennon, Lawrence R. Waldoch, James P. McCarthy, Lindquist & Vennum, Minneapolis, Minn., for Kaiser Steel Corp.

Paul F. Hultin, Marcus L. Squarrell, David A. Bailey, Parcel, Mauro, Hultin & Spaanstra, Denver, Colo., Robert Laufer, Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for defendants Joseph A. Frates, Charles S. Holmes, Robert E. Merrick and Stan P. Doyle.

Britt C. Anderson, Bonnie A. Bell, Katch, Anderson & Wasserman, Denver, Colo., Leon C. Marcus, Robin Weinstein, Booth, Marcus & Pierce, New York City, for Official Unsecured Creditors' Committee of Kaiser Steel Corp.

## ORDER ON MOTION FOR ISSUANCE OF CONTEMPT CITATION

CHARLES E. MATHESON, Chief Judge.

This matter was presented to the Court on the Defendants', Joseph A. Frates, Robert E. Merrick, Charles S. Holmes and Stan P. Doyle (the "Frates Defendants") motion for the issuance of a contempt citation to Coopers & Lybrand ("Coopers"). At issue is the question of whether sanctions should be imposed against Coopers for its failure to fully comply with a subpoena *duces tecum* which the Frates Defendants had caused to have issued in connection with a deposition to be taken of representatives of Coopers.

The Chapter 11 case out of which this matter arose was originally filed in March of 1987. The Unsecured Creditors Committee (the "Committee") was formed for Kaiser Steel Corporation ("Kaiser" or "Debtor") and obtained approval of the Court to engage the accounting firm of Coopers in March of 1987 to provide accounting services for the Committee. In the Spring of 1987, the Debtor commenced litigation seeking to recover various assets for the benefit of the estate. The litigation was founded on claims that fraudulent transfers had occurred in connection with a 1984 leveraged buyout ("LBO") and related transactions involving Kaiser pre-petition.

Coopers filed a fee application with the Court which disclosed the nature of the services that it had been providing to the Committee. Various tasks had been engaged in by Coopers which were identified as follows:

1. Preliminary Analysis of Transactions. This analysis revolved around an investigation by Coopers into the LBO and its impact on Kaiser. A report was issued in April of 1987 and supplemented in May 1987, such reports being prepared in order to allow the Committee to determine

whether or not it should join in the litigation concerning the LBO.

2. Cash Flow Analysis—Kaiser Coal Company. This analysis was based on information derived from the Debtor's financial records concerning historical operations of the coal properties and resulted in a report being issued on or about April 7, 1987. A copy of this report has been provided to the Frates Defendants.

3. Cash Flow Analysis—Kaiser Steel Corporation. This analysis was similar to the report prepared with respect to Kaiser Coal Company and involved a review of financial information at the Debtor's offices and at its plant sites; written reports were issued to the Committee.

4. Cost Reduction Work. Coopers did a review of financial records to develop a program to diminish and minimize cash outflows during the pendency of the Chapter 11 case. A report was generated and was utilized in part to enable the Committee to determine the reasonableness of the Debtor's projections and its operations.

5. Asset Valuation. This report was undertaken by Coopers to investigate and determine the values of the assets of the Debtor and the realistic options for any reorganization. Again, the report was based on information drawn from the books and records of the Debtor.

6. Retirement Benefit Study. The Debtor has significant liabilities in connection with retirement benefits under its pension plans. Coopers initiated a report in order to attempt to quantify the extent of the pension obligations.

7. Medical Plan. Similar to the retirement benefits, the Debtor has obligations which it has accrued under various medical plans for retirees and Coopers was engaged to attempt to estimate the extent of those benefits and the liabilities pertaining to the Debtor.

The Committee became involved as a party-plaintiff in certain of the LBO litigation filed with this Court and provided the Debtor with a copy of the preliminary analysis of the LBO which had been generated by Coopers. Thereafter, the Committee was dismissed from the litigation. The Debtor has since separately engaged Coopers to provide it with accounting services, but no services have yet been provided to the Debtor concerning the LBO litigation.

The Frates Defendants' counsel caused to be issued a subpoena *duces tecum* which was served on Coopers for a deposition the Frates Defendants desired to take. The subpoena required Coopers to produce documents which had been (a) *provided to* Coopers by the Debtor and (b) *prepared by* Coopers in connection with the tasks performed by it for the Committee. At the deposition no documents were produced and objections were interposed to the production of such documents. In lieu of producing documents, the Debtor and/or the Committee have provided the Frates Defendants with the schedule of the documents which have been made available for general inspection by all defendants in these cases, which included the documents provided to Coopers by the Debtor. The Debtor has also produced to the Court, *in camera,* a list of specific documents or files which have not been produced to the Frates Defendants in response to the subpoena *duces tecum.*

The Debtor has objected to producing Coopers' Analysis of the Transactions on the ground that the report represents work product prepared by a non-testifying expert in anticipation of trial. The Committee has objected to the production of the balance of the reports claiming that said reports are confidential and/or are work product of the Committee. The Frates Defendants argue that the LBO Analysis is not work product because it was not prepared for the Debtor and argue that there is no basis for the privilege claims of the Committee. The Court has previously determined that this is a "core" matter pursuant to 28 U.S.C. § 157(b)(2)(H) and shall enter a final order, accordingly.

## MEMORANDUM

The scope of discovery is generally set forth in Rule 26 of the F.R.Civ.P. That Rule allows discovery of any matter which is not privileged and which is relevant.

Limitations can be placed on discovery if the Court determines that the discovery sought is obtainable from some other source that is more convenient, less burdensome or less expensive. Rule 26(b)(1). Further, trial preparation materials are only discoverable upon a showing of substantial need and the existence of undue hardship. As pertains to experts, the reports and other work of experts who are not expected to testify at the trial can only be obtained under exceptional circumstances. Rule 26(b)(4)(B). Coopers has been designated as an expert from whom testimony at trial is not expected.

The Analysis of Transactions prepared by Coopers deals directly with the transactions which are in question in the within litigation. The report was prepared for the Committee to use in evaluating the merits of the LBO litigation and deciding whether to join therein. There is no question that it constitutes trial preparation materials which could not be obtained from the Committee except by the showing of exceptional need. The question becomes, therefore, whether the objection interposed by the Debtor is not applicable or has been waived because the report was delivered to the Debtor and the Committee is not a party to the litigation.

■ As regards to the instant litigation, the Committee and the Debtor have common interests. Each has an obligation to seek to maximize the assets in the Debtor's estate. Had the Debtor failed and refused to file the present cases, the Committee could have sought separate authorization to do so for the benefit of the estate. The cost of investigating and preparing the reports should therefore be borne by the estate. The preparation by Coopers of the report was for the benefit of the estate, whether at the instigation of the Debtor or the Committee, and the disclosure of the report may be detrimental to the interests of the estate and to the preservation of the Plaintiff's case herein. *See, Western Fuels Assoc., Inc. v. Burlington Northern R.R. Co.*, 102 F.R.D. 201 (D.Wyo.1984); *SCM Corp. v. Xerox Corp.*, 70 F.R.D. 508 (D.Conn.1976).

In addressing whether a disclosure of information or documents is fatally inconsistent with maintaining the work product privilege, the Court in *United States v. American Tel. & Tel. Co.*, 642 F.2d 1285, 1299–1300 (D.C.Cir.1980) stated, in pertinent part:

> The existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege. But "common interests" should not be construed as narrowly limited to co-parties. So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary. When the transfer to a party with such common interests is conducted under a guarantee of confidentiality, the case against waiver is even stronger.

Consistent with the above cited authorities, the Debtor here is entitled to assert an objection to the production of the Coopers' LBO Analysis as trial preparation materials, even though the Analysis was prepared by Coopers for the Committee and not the Debtor.

■ The Coopers' LBO Analysis has been prepared from the Debtor's documents and records. Those records are equally available to the Defendants and their experts. No compelling reason has been shown why the Frates Defendants should be permitted to invade the domain of the confidential trial preparation materials of the Plaintiff pursuant to F.R.Civ.P. Rule 26(b)(4). The Debtor's objection to such tactics was well taken and the Frates Defendants' request for a contempt citation to be issued to Coopers for its failure to produce the analysis is properly denied. *See, United States v. American Tel. and Tel. Co., supra; see also, United States v. Gulf Oil Corp.*, 760 F.2d 292 (Temp. Emerg.Ct.App.1985) (sharing of documents

between nonadversarial parties, at the time of disclosure, who also shared strong common interests with respect to the fruit of the trial preparation efforts did not result in a waiver of the work product privilege even though the parties ultimately developed an adversarial relationship).

The Court has reviewed the list of documents which have been filed *in camera* by the Debtor and as to which the Debtor asserts a privilege, including a claim of work product. There are a limited number of documents involved and the Court is satisfied from the description of the files and documents submitted that they are of the same nature as the LBO Analysis and properly fall within the scope of protected materials. Thus, the Debtor's objection to the production of such documents is likewise sustained.

The Frates Defendants have also sought to have Coopers produce all of the documents and records which were provided to them by the Debtor and utilized by them in the preparation of their reports. The Committee has objected to such production.

The Committee performs important multifaceted roles in a reorganization proceeding. It is the official organized voice of the unsecured creditors. As such, the Committee provides needed checks and balances in the reorganization process. Within this role, it investigates, it appears, it negotiates, it may litigate and is, at all times, intimately involved in the reorganization.

The Committee's role cannot be achieved in a vacuum. It must have access to the Debtor's records. Further, in order to properly foster negotiations over reorganization plans, the Debtor must be able to provide information to the Committee free of the risk that the Committee may be forced to disgorge such records and information to adverse third parties without the opportunity of the Debtor to preserve, if appropriate, any objections it may have to such disclosures.

The Court does not mean to suggest that a debtor can, by the expedient of turning over information to a creditors' committee, shield such information from discovery if it is not privileged or otherwise exempt from discovery demands. At this point, the question is not so much whether the information should be produced, but by whom. There has been no showing made by the Frates Defendants that the information sought from the Committee's accountants is not readily available from the Debtor. To the contrary, it appears that such information has already been deposited in the central documentary depository. In the absence of a showing of prejudice or need, the Court will not order production of such records by the accountants. Thus, the Frates Defendants' motion for a contempt citation due to Coopers' failure to produce the documents delivered to it by the Debtor is also denied.

There remains the question of whether the accountants can be required to deliver the other reports which have been generated by them. The balance of the Coopers' reports were not prepared for or in anticipation of the instant litigation. They were prepared to enable the Committee to better analyze the Debtor's assets, business and affairs and to perform such an evaluation in anticipation of negotiating and consummating a reorganization plan.

■■■ Materials which are exempt from discovery as trial preparation materials do not lose that exemption just because they have been prepared in connection with litigation other than the litigation within which discovery is sought. *SCM Corp. v. Xerox Corp., supra.* As discussed above, the activity of the Committee is essentially adversarial in nature. Here the Committee had its expert prepare special accounting reports to assist the Committee in the fulfillment of its duties in the Chapter 11 case. In addition, the work done by Coopers is derived from materials that may be discoverable from the Debtor at the request of the Frates Defendants. No special need has been shown as to why the Frates Defendants should have direct access to what the Court views to be trial preparation materials generated by Coopers for the Committee in the underlying Chapter 11 case. *See, Nishnic v. United States Department of Justice,* 671 F.Supp. 771 (D.D.C.1987) (party was not required to segregate and

disclose factual material from documents since such segregation was likely to reveal some of attorney's tactics and strategic thoughts).

Therefore, in view of the foregoing findings and conclusions of law, such documents are not discoverable pursuant to the provisions of F.R.Civ.P. Rule 26(b)(3) and (4) and the Frates Defendants' motion to enforce its subpoena by contempt citation is denied.   Accordingly,

IT IS SO ORDERED.