**In re MORTGAGE & REALTY TRUST, Debtors.**

**In re VALUE PROPERTY TRUST, Plaintiff,**

v.

**ZIM COMPANY, Defendant.**

**Bankruptcy No. LA 95–31101 SB.**
**Adversary No. AD 95–05861SB.**

United States Bankruptcy Court,
C.D. California.

Sept. 16, 1997.

Bernard Shapiro, Spencer J. Helfen, Murphy, Weir & Butler, Los Angeles, CA.

Bennett J. Murphy, Michael J. Lawrence, Latham & Watkins, Los Angeles, CA.

## AMENDED OPINION ON COMMON INTEREST PRIVILEGE MOTION

SAMUEL L. BUFFORD, Bankruptcy Judge.

### I. INTRODUCTION

This motion raises the issue of whether a three-way conversation between the debtor's executive vice-president, bankruptcy counsel for the debtor, and counsel for the unofficial committee of creditors is protected by the attorney-client privilege, as extended by the common interest doctrine. The court holds that the communication is privileged because the communication related to a common interest between the debtor and the unofficial committee. In consequence, the common interest exception to the waiver of the attorney-client privilege applies, and the communication is privileged.

### II. FACTS

Mortgage and Realty Trust ("MRT") is a real estate investment trust that filed this chapter 11 case on August 18, 1995. This litigation arises out of an agreement approved by the MRT board of trustees on August 16, 1995, two days before the chapter 11 filing, which provided for the sale to plaintiff Zim Company ("Zim") of MRT's Villa del Cresta apartment complex in Florissant, Missouri, a suburb of St. Louis, for $9.8 million. At the same August 16 meeting, MRT's board of trustees approved the filing of this bankruptcy case.

The court confirmed MRT's prepackaged plan of reorganization on September 22, 1995, five weeks after the case was filed. The plan converted a substantial portion of some $250 million in debt into equity. This new equity constituted approximately 98% of the new equity in the debtor, and diluted the old shareholders down to approximately two percent of the outstanding equity. MRT also changed is name to Value Property Trust ("VPT").

James A. Dalton ("Dalton") was the Executive Vice President of MRT until the confirmation of its plan of reorganization. In his deposition in this adversary proceeding, he testified that shortly after the August 16, 1995 board of trustees meeting (and apparently after the bankruptcy filing), Dalton had participated in a telephone conversation ("the communication") with Paul S. Aronzon of Milbank, Tweed, Hadley & McCloy ("Aronzon") and Robert J. White of O'Melveny & Myers ("White"). Aronzon served as bankruptcy counsel to MRT in its chapter 11 case, and White served as counsel to the unofficial committee of creditors.

Dalton refused to disclose the contents of the communication on the grounds that the communication was protected by the joint defense or common interest privilege. Zim has brought this motion to compel Dalton's testimony on this subject, and the parties have prepared a joint stipulation as required by local rule.

### III. DISCUSSION

In an action based on federal law, the federal common law of attorney-client

privilege applies. *See* Fed.R.Evid. 501[1]; *Admiral Insurance Co. v. United States District Court*, 881 F.2d 1486, 1492 (9th Cir. 1989). In diversity cases, privileges are determined under applicable state law. F.R.Evid. 501. This is an action to set aside a postpetition transfer of property from the debtor to Zim, on the grounds that the parties failed to obtain court approval that was required by the Bankruptcy Code. Thus the action is based on federal law, and the federal law of attorney-client privilege applies.

## A. The Federal Attorney–Client Privilege

■ Under Ninth Circuit law, the attorney-client privilege under Rule 501 of the Federal Rules of Evidence applies if the following conditions are met:

(1) legal advice of any kind is sought

(2) from a professional legal adviser in his capacity as such,

(3) the communications relating to that purpose,

(4) made in confidence

(5) by the client,

(6) are at this instance permanently protected

(7) from disclosure by himself or by the legal adviser,

(8) unless the protection has been waived.

*Admiral Insurance*, 881 F.2d at 1492. The claimant of the attorney-client privilege must carry the burden of establishing the applicability of the privilege. *United States v. Osborn*, 561 F.2d 1334, 1339 (9th Cir.1977).

■ The attorney-client privilege is waived when the communication between the attorney and client is made in the presence of a third party. *United States v. Landof*, 591 F.2d 36 (9th Cir.1978) (holding that the attorney-client privilege was waived as to a conversation, where an attorney for a third party attended the meeting). Similarly, the voluntary delivery of a privileged communication by a holder of the privilege to someone not a party to the privilege waives the privilege. *United States v. Zolin*, 809 F.2d 1411, 1415 (9th Cir.1987) (holding that the contents of certain tapes were privileged because the non-party present at the time the tapes were recorded had a common interest with the party involved in litigation), *aff'd in relevant part*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989).

Zim contends that counsel for the unofficial creditors' committee qualifies as a third party under this rule, and that the communication here at issue thus does not meet the requirements of the attorney-client privilege. VPT contends that a common interest between MRT and the committee at the time of the conversation preserves the attorney-client privilege for this communication.

## B. Common Interest Extension of Attorney–Client Privilege

■ The common interest privilege protects a communication made when a non-party sharing the client's interest is a party to a confidential communication between attorney and client. *Zolin*, 809 F.2d at 1417. The common interest privilege is an exception to the waiver rule when the parties sharing the communication are engaged in a discussion of common interest. This privilege is a vital and important part of a client's right to representation by counsel. *Continental Oil Co. v. United States*, 330 F.2d 347, 350 (9th Cir.1964).

■ The common interest extension of the attorney-client privilege has long been recognized in United States law.[2] It arises

---

1. Rule 501 provides:
    Except as otherwise required by the Constitution of the United States or provided by Act of Congress or in rules prescribed by the Supreme Court pursuant to statutory authority, the privilege of a witness, person, government, State, or political subdivision thereof shall be governed by the principles of the common law as they may be interpreted by the courts of the United States in the light of reason and experience. However, in civil actions and proceedings, with respect to an element of a claim or

defense as to which State law supplies the rule of decision, the privilege of a witness, person, government, State, or political subdivision thereof shall be determined in accordance with State law.

2. The common interest privilege first appeared in 1871. *See Chahoon v. Commonwealth*, 62 Va. (21 Gratt.) 822, 841–43 (1871) (protecting confidentiality of oral communications between criminal codefendants in the presence of their legal counsel). The rule apparently was not invoked

largely in the context of joint defendants, and has frequently been referred to as the "joint defense" privilege. However, its broader contours have long been apparent.

■ The common interest privilege applies where (1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not been waived. *In re Bevill, Bresler & Schulman Asset Management Corp.,* 805 F.2d 120, 126 (3d Cir.1986); *Griffith v. Davis,* 161 F.R.D. 687, 692 (C.D.Cal.1995).

The Ninth Circuit was the leader in developing the common interest extension of the attorney-client privilege rule. In *Continental Oil,* the court used the rule to quash subpoenas for memoranda, which were prepared to permit the attorneys to represent their clients better in any resulting litigation, and which were exchanged among attorneys whose clients had appeared before a grand jury. *Continental Oil,* 330 F.2d at 350. The following year the Ninth Circuit extended the rule to cover a joint meeting among two clients and their respective attorneys in which they discussed a pending indictment and their strategy in responding to it. *Hunydee v. United States,* 355 F.2d 183, 184–85 (9th Cir.1965).

■ Pending litigation is not necessary to invoke the common interest extension of the attorney-client privilege: "the privilege ... is irrespective of litigation begun or contemplated." *Continental Oil,* 330 F.2d at 350 (citing WIGMORE ON EVIDENCE § 2294). The privilege applies whenever the communication is made in order to facilitate the rendition of legal services to each of the clients involved in the conference. 3 WEINSTEIN'S FEDERAL EVIDENCE § 503.13[2] (Joseph M. McLaughlin ed., 2d ed.1997).

■ The common interest privilege does not require a complete unity of interests among the participants. The privilege applies where the interests of the parties are not identical, and it applies even where the parties' interests are adverse in substantial respects. *Hunydee,* 355 F.2d at 185. The privilege applies even where a lawsuit is foreseeable in the future between the codefendants. *In re Grand Jury Subpoena Duces Tecum,* 406 F.Supp. 381, 392 (S.D.N.Y.1975).

■ Bankruptcy cases frequently involve parties who share common commercial interests, but whose interests in other respects may be very different. This is especially true when the parties at issue are a debtor in possession under chapter 11 and a committee of creditors. The debtor in possession and the committee of creditors share a duty to maximize the debtor's estate. *In re Kaiser Steel Corp.,* 84 B.R. 202, 205 (Bankr.D.Colo.1988). The committee performs many important roles in the reorganization process. It is the official organized voice of the unsecured creditors. It provides needed checks and balances in the reorganization process. Within this context, it investigates, it appears, it negotiates, it may litigate, and it is at all times intimately involved in the reorganization. *Id.* In order to permit the committee to carry out these duties, the debtor must be able to provide information to the committee free of the risk that the committee may be forced to disgorge such information to adverse third parties. *Id.* A communication in furtherance of this common legal interest with that of the debtor is entitled to the protection of the attorney-client privilege, unless its confidentiality has been waived.

VPT has shown that the communication among Dalton, MRT's bankruptcy counsel and counsel for the creditors' committee dealt with legal procedures and strategies concerning potential litigation with Zim. Under MRT's plan of reorganization, the creditors became the equity owners of reorganized MRT. Consequently, the debtor and the committee shared a common legal inter-

in a reported decision thereafter until 1942. *See Schmitt v. Emery,* 211 Minn. 547, 2 N.W.2d 413, 417 (1942) (protecting counsel's written record of client's statements that was shared with co-counsel). These appear to be the only reported opinions on this subject before the Ninth Circuit

case law discussed infra. *See generally,* Deborah Stavile Bartel, *Reconceptualizing the Joint Defense Doctrine,* 65 FORD. L.REV. 871, 885–86 (1996); Patricia Welles, *A Survey of Attorney–Client Privilege in Joint Defense,* 35 U. MIAMI L.REV 321, 324 (1981).

est that extended the attorney-client privilege to the conversation here at issue.

## IV. CONCLUSION

The court concludes that the debtor and the creditors' committee shared a common interest in opposing the claim made by Zim in this bankruptcy case, which ripened into the litigation now pending. The communication here at issue was made in the furtherance of this common interest, and has not been otherwise disclosed. It thus is entitled to protection under the common interest extension of the attorney-client privilege.