In re IMPERIAL CORPORATION OF AMERICA, Related Litigation.

Ronald L. DURKIN, Trustee of the Benchmark Irrevocable Trust, Plaintiff,

v.

Rodney B. SHIELDS, et al., Defendants.

No. 92–1003–IEG(LSP).

United States District Court, S.D. California.

Feb. 18, 1998.

Mark Shinderman, Ashleigh A. Danker, Michael H. Weiss, Weiss, Scolney, Spees, Danker and Kop, Los Angeles, CA, Steven K. Davidson, John D. Graubert, Martin ·D. Schneiderman, Charles G. Cole, Steptoe and Johnson, Washington, DC, Joseph W. Mott, Bennett Evan Cooper, Francis J. Burke, Jr., Emily R. Froimson, Tracy M. Lorenz, Steptoe and Johnson, Phoenix, AZ, George Brandon, Christopher A. LaVoy, Steptoe and Brandon, Phoenix, AZ, for Ronald L. Durkin, Trustee of The Benchmark Irrevocable Trust.

James P. Hill, Sullivan, Hill, Lewin, Rez, Engel and Labazzo, San Diego, CA, for Rodney B. Shields, Three Bridges Investment Group, Max Grill, William Steiner, Sonem Partners, Milberg, Weiss, Bershad, Specthrie & Lerach, William S. Lerach, Keith F. Park, Helen J. Hodges, Alan Schulman, Greenfield & Chimicles, Richard D. Greenfield, Francis J. Firana and Kevin P. Roddy.

Michael P. Castellaneta, Klinedinst, Fliehman and McKillop, San Diego, CA, James P. Hill, Sullivan, Hill, Lewin, Rez, Engel and Labazzo, Susan EH Ragsdale, Law Offices of Susan EH Ragsdale, John D. Klinedinst, Douglas A. Pettit, Klinedinst, Fliehman and McKillop, San Diego, CA, for Barrack Rodos and Bacine, Leonard Barrack, Edward M. Gergosian and Douglas J. Campion.

## ORDER AFTER *IN CAMERA* REVIEW OF PRIVILEGE LOG OF PILLSBURY, MADISON & SUTRO (1167–1)

PAPAS, United States Magistrate Judge.

Defendant Shea & Gould (hereafter "S & G") has moved to compel plaintiff Ronald L. Durkin (hereafter "plaintiff") to produce certain privilege log documents of Pillsbury, Madison & Sutro (hereafter "Pillsbury"), former attorneys for plaintiff and attorneys for Imperial Corporation of America as debtor-in-possession (hereafter "ICA–DIP"). The motion was joined by defendant Baker & McKenzie.

On August 11, 1997, September 8, 1997, September 22, 1997 and October 6, 1997, the court heard argument on S & G's motion and granted the motion in part. The court ordered plaintiff to produce, for in camera review, specific documents listed on the privilege log which S & G claims are essential to its examination of plaintiff's allegations against S & G regarding plaintiff's allegations of avoidance of the statute of limitations. S & G believes disclosure of the requested documents will reveal facts to disprove plaintiff's allegations. On October 3 and 7, 1997, Pillsbury delivered the disputed documents to the court for in camera review. The documents delivered to the court were contained in seven boxes and amounted to nearly six linear feet in volume.

On October 10, 1997, this court ruled that S & G was entitled to examine certain documents listed on the privilege log of Stroock, Stroock & Lavan (hereafter "Stroock"), plaintiff's former attorneys prior to Pillsbury. S & G's and plaintiff's arguments pertaining to the disclosure of the Stroock documents are analogously pursued here.

Here, as there, S & G argues it should be entitled to examine all Pillsbury documents which it believes contain information pertaining to Pillsbury's investigation of claims against Milberg Weiss prior to April 1991. S & G contends it has shown that earlier investigation by plaintiff's counsel of claims against Milberg Weiss are linked to plaintiff's counsel's later decision to file the present action against S & G. As substantiation, S & G points to the deposition testimony of plaintiff to the effect that he relied on his attorneys' advice and investigation regarding the prosecution of a legal malpractice action against S & G and overcoming S & G's statute of limitations defense. Moreover, S & G contends that plaintiff's allegations in avoidance of the statute of limitations puts "in issue" the investigation conducted by plaintiff's counsel prior to April 1991. S & G asserts that the investigation undertaken by Pillsbury should have lead plaintiff's counsel to discover facts that would have put them on notice that there was a viable legal malpractice claim against S & G earlier than April 1991. However, plaintiff's attorneys have testified at their depositions that they do not remember what advice they gave plaintiff prior to April 1991, or what investigations they were pursuing at that time. S & G therefore argues that, under FRCP 26(b)(3), it has made the required showing that it has a substantial need for the documents requested and that it is unable, without undue hardship, to obtain the substantial equivalent of the material by other means.

Plaintiff, on behalf of Pillsbury, argues, on the other hand, that S & G is required to show more, i.e., S & G has failed to show, under FRCP 26(b)(3), it has a compelling need to invade Pillsbury's attorney-client privilege or work product because S & G has not yet taken pertinent depositions to discover the information it seeks. Plaintiff also claims that disclosure to S & G, or an *in camera* review of the documents, would be prejudicial to him because the documents contain analyses, opinions, advice and strategy concerning the preference and fraudulent transfer claims that are (or were) pending against other defendants in this case.

In reference to the documents listed on the Pillsbury privilege log, plaintiff brings up another argument that was not raised about the Stroock documents. Plaintiff argues the documents listed on the Pillsbury privilege log are protected from disclosure by the common interest privilege. In this argument, plaintiff contends that the documents listed on the privilege log, and submitted to the court for *in camera* review, are communications between Pillsbury, as attorneys for ICA–DIP and the Official Creditors Committee of ICA (hereafter "OCC"). Plaintiff argues that ICA–DIP and the OCC shared a sufficient commonality of interest to protect the documents from disclosure.

S & G, on the other hand, argues the communications between the Pillsbury attorneys as the attorneys for ICA–DIP and the OCC, were not protected by the common interest privilege because they had adversarial interests, rather than common interests and goals. To this end, S & G presents letters to and from Pillsbury attorneys to and from plaintiff's attorney Michael Weiss indicating disagreement regarding scheduling

and responsiveness to requests. (See Declaration of Barbara J. Orr, filed August 22, 1997, Exhibit D.)

The court, having reviewed the moving, opposition and reply papers of counsel, having heard oral argument, and having reviewed the approximately six linear feet of documents *in camera*, finds that S & G is not entitled to examine all the documents submitted for *in camera* review. S & G's showing of a potential link between the investigation of facts supporting the Milberg Weiss action by plaintiff's counsel and the discovery of claims made against S & G in this action, does not entitle S & G to examine all of the Pillsbury attorneys' opinions, theories and investigations regarding the Milberg Weiss action, or other matters pertaining to the administration of the ICA bankruptcy estate contained in the documents.

■ In *Burroughs v. DeNardi*, 167 F.R.D. 680, 685 (S.D.Cal.1996), this court stated the common interest privilege applies when (1) the communications were made in the course of a joint defense (or prosecution); (2) statements were designed to further a joint defense or prosecution effort; and (3) the privilege has not been waived. The common interest privilege is an extension of the attorney-client privilege and work product doctrine. *Burroughs, supra* at 685; *In re Grand Jury Subpoenas, supra* at 249; *Killebrew v. City of Greenwood*, 1997 WL 208140, at *2, 1997 U.S. Dist. Lexis 10065, at *5 (N.D.MS 1997). The critical inquiry is whether a "sufficient commonality of interests" exists between the parties such that the privilege may be asserted. *Id.* at 686, see also *In re Grand Jury Subpoenas*, 902 F.2d 244, 249 (4th Cir.1990).

■ Courts have recognized that the common interest privilege applies to communications between debtors-in-possession and creditors committees in bankruptcy cases. In *Kaiser Steel Corp. v. Frates*, 84 B.R. 202 (Bkrtcy.D.Colo.1988) *cert. denied*, 494 U.S. 1004, 110 S.Ct. 1297, 108 L.Ed.2d 474 (1990), the court upheld the common interest privilege between the debtor-in-possession and creditors committee because "The Committee and the Debtor have common interests. Each has an obligation to seek to maximize

the assets in the Debtor's estate." *Id.* at 205. Moreover, the *Kaiser* court noted:

> The Committee's role cannot be achieved in a vacuum. It must have access to the Debtor's records. Further, in order to properly foster negotiations over reorganization plans, the Debtor must be able to provide information to the Committee free of the risk that the Committee may be forced to disgorge such records and information to adverse third parties without the opportunity of the Debtor to preserve, if appropriate, any objections it may have to such disclosures.

*Id.* at 206.

■ Moreover, under the common interest privilege, waiver of the privilege requires consent of all parties who share the privilege. *Killebrew v. City of Greenwood*, 1997 WL 208140, 1997 U.S. Dist. Lexis 10065 (N.D.MS 1997); *John Morrell & Co. v. Local Union 304A*, 913 F.2d 544, 556 (8th Cir.1990) *cert. denied* 500 U.S. 905, 111 S.Ct. 1683, 114 L.Ed.2d 78 (1991); *In re Grand Jury Subpoenas, supra* at 248. Consequently, in accordance with the common interest privilege, placing matters "at issue" by one or two common interest privilege holders does not constitute waiver of the privilege without the consent of the other. However, in this action, S & G contends allegations of avoidance of the statute of limitations puts "in issue" the entire investigation conducted by counsel for plaintiff prior to April 1991.

■ S & G contends that since plaintiff has alleged avoidance of the statute of limitations, what facts Pillsbury possessed prior to April 1991, and what investigations Pillsbury was pursuing during that time frame, waive both the attorney-client privilege and work product doctrine to the extent the privileged information may be relevant to the avoidance of the statute of limitations issue. *Killebrew, supra*, 1997 WL 208140, at *2, at *5–6. Since plaintiff has placed in issue his own knowledge, and that of his attorneys', and Pillsbury attorneys', any privilege that attaches to the information contained in the Pillsbury documents is waived, at least in the limited scope of addressing the avoidance of

the statute of limitations issue. *Killebrew,* 1997 WL 208140, at *3, *supra* at *7.

In this action, Pillsbury, as attorneys for ICA–DIP, were in effect succeeded by attorneys Weiss and Leibow, attorneys for the OCC. The OCC, in turn, and in effect, was succeeded by plaintiff Durkin, Trustee for the Benchmark Irrevocable Trust. Therefore, any rights that ICA–DIP had that are presently part of this litigation were passed to plaintiff Durkin. Similarly, the interests of the OCC are now being pursued by plaintiff Durkin. As a result, the interests of ICA–DIP, the OCC and plaintiff Durkin, at least with respect to this litigation, are the same. Likewise, Pillsbury, which represented ICA–DIP, was succeeded by the Weiss firm, attorneys for the OCC, which was succeeded by plaintiff Durkin's present counsel, Steptoe & Johnson.

The court recognizes that, at the time the Pillsbury documents were created, the common interest privilege protected their disclosure due to the common interests of ICA–DIP and the OCC. However, those interests were merged and are now in the control of plaintiff Durkin. In this action, Durkin has placed in issue matters that touch upon those prior interests, over which he now has total control. At the same time, Durkin now asserts the common interest privilege as a protection from disclosure of the documents, which were available due to the prior common interests of ICA–DIP and the OCC. Such an assertion of the common interest privilege subverts the purpose of the privilege. To permit Durkin to assert the privilege, in this instance, is tantamount to a client avoiding disclosure of documents with respect to a matter put in issue by merely changing counsel, and arguing that prior counsel has work product and attorney-client privileged information, that his successor counsel cannot disclose. The common interest privilege was not intended for use in this way.

The court has been unable to locate, and counsel for plaintiff and S & G have not cited, any authority in which the common interest privilege has been extended in a situation where, as here, the holders of the common interest privilege are succeeded by one another and their interests, in effect, merge into one representative party. Since the common interest privilege is an extension of the attorney-client privilege and work product doctrine, *Burroughs,* at 685; *Grand Jury Subpoenas* at 249; *Killebrew,* 1997 WL 208140, at *2, at *5, the court will not allow the common interest privilege to be used as a shield to prevent the disclosure that S & G seeks.

■ As in the court's order of October 10, 1997, the court is guided by the opinion of the Honorable Irma E. Gonzalez in *Titan Corp. v. M/A–Com, Inc.* [93–0335–IEG(POR) S.D.Cal., June 22, 1994]. In *Titan,* Judge Gonzalez ruled that under circumstances analogous to those involved here, the party alleging reliance on his attorney's investigation to discover certain causes of action and overcome the statute of limitations bar, impliedly waived the attorney-client privilege and work product protection that might apply regarding the investigation and its findings and conclusions.

Judge Gonzalez also ruled that such an implied waiver did not constitute a "wholesale waiver" of all the information claimed to be privileged. Instead, she found that the party seeking the information can obtain all of the information pertinent to the statute of limitations issues and not do violence to what remains of plaintiff's attorney-client privilege or the work product doctrine by following the carefully crafted guidelines set for by the Fifth Circuit in *Conkling v. Turner* 883 F.2d 431 (5th Cir.1989) (*Id.* at 7).

This court again adopts the reasoning set forth in *Titan.* Therefore, S & G shall be limited to discovering from the Pillsbury documents the following information as contained in the documents submitted for *in camera* review:

(a) when Pillsbury attorneys became aware of facts which would have put them on notice that a cause of action against S & G could be validly stated; and

(b) the specific facts which would have put Pillsbury attorneys on such notice.

Accordingly, the court hereby orders Pillsbury to produce documents to S & G, as indicated in the attached Exhibit A to this Order, on or before March 2, 1998.

IT IS SO ORDERED.

**EXHIBIT A**

| Document # | Comment |
|---|---|
| 126 | page beginning with "6/8/90 Lori Dawson" |
| 126 | page beginning with "conf call Board of Directors 7–6–90" |
| 126 | page beginning with "Estate Has 12MM Cash." |
| 126 | page beginning with "SDC *if any*" |
| 126 | page beginning with "SC-under Del.law, corp req'd to . . ." |
| 126 | page beginning with "Recovery actions—" |
| 126 | page beginning with "SC—whose claims wer paid" |
| 127 | page beginning with "6/22 Conversation w/Kurt Hunsicker" |
| 127 | next page beginning with "Derivative claim" |
| 128 | page beginning with "deriv-ICA (by SH) v. Dir/Off |
| 128 | page beginning with "most signif consequence of bk wd be:" |
| 128 | page beginning with "fail to exercise indep objective judgnt re whether to settle" |
| 128 | page beginning with "(5) distribution of settlement fund which occured . . ." |
| 128 | page beginning with "(11) fraudulent tr—release of claims . . ." |
| 128 | page beginning with (1) "Theory 'benefits estate' " |
| 135 | Memorandum to Jim Sterrett, from Sue Hodges, April 27, 1990, Re: "ICA v. OTS" |
| 156 | page beginning with " *$ 500,000 M/L Washington . . ." |
| 156 | page beginning with "automated cs mgmt system" |
| 156 | page beginning with "Lyman Hamiltons office" |
| 156 | page beginning with "PLus says Sheldon, . . ." |
| 156 | page beginning with "–401(k) account" |
| 158 | page beginning with *"LITIGATION SUMMARY"* |
| 158 | page beginning with "The Government against itself . . ." |
| 158 | page beginning with "2. req. form—reviewed" |
| 158 | page beginning with "FIRREA mandated changes" |
| 158 | page beginning with "Interim Capital Assistance" |
| 202 | Memorandum to: P.C. Shea, K.L. Partrick, S.J. Hodges, from D.M.Leigh, July 11, 1990, Re: Recovery of Distributions Made by ICA and Its Insurer Under a Prepetition Settlement Agreement |
| 204WW | Memorandum to L.Partrick from SA.Danon, May 30, 1990, Re: ICA–Parachute Payments to Former Officers," p.11 |
| 237DD | Letter of Michael H. Weiss to Patrick C. Shea, July 16, 1990, Re: Imperial Corporation of America. |
| 308 | Letter of Patrick C. Shea to Ronald L. Leibow, October 4, 1990, Re: Imperial Corporation of America. . . , p. 2 |
| 347 | Letter of Michael H. Weiss to Patrick C. Shea, July 16, 1990, Re: Imperial Corporation of America |
| 362 | Letter of Sue J. Hodges to Michael Weiss, August 3, 1990, Re: Imperial Corporation of America |
| 375 | Letter of Lori Dawson to Michael Weiss, Sept 11, 1990, Re: Imperial Corporation of America |