# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| RCS CREDITOR TRUST, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 2017-0178-SG |
| | ) | |
| NICHOLAS S. SCHORSCH, EDWARD | ) | |
| M. WEIL, JR., WILLIAM KAHANE, | ) | |
| PETER M. BUDKO, BRIAN S. | ) | |
| BLOCK, LOUISA QUARTO, RCAP | ) | |
| HOLDINGS LLC, AR CAPITAL, LLC, | ) | |
| AR GLOBAL INVESTMENTS, LLC, | ) | |
| AMERICAN REALTY CAPITAL | ) | |
| RETAIL ADVISOR, LLC, AMERICAN | ) | |
| FINANCE ADVISORS, LLC, | ) | |
| AMERICAN REALTY CAPITAL | ) | |
| HEALTHCARE III ADVISORS, LLC, | ) | |
| AMERICAN REALTY CAPITAL | ) | |
| HOSPITALITY ADVISORS, LLC, | ) | |
| NEW YORK CITY ADVISORS, LLC, | ) | |
| GLOBAL NET LEASE ADVISORS, | ) | |
| LLC, AMERICAN REALTY CAPITAL | ) | |
| HEALTHCARE II ADVISORS, LLC, | ) | |
| NEW YORK RECOVERY ADVISORS, | ) | |
| LLC, and BDCA ADVISER, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

Date Submitted:  December 17, 2019
Date Decided:  March 20, 2020

Philip Trainer, Jr. and Marie M. Degnan, of ASHBY & GEDDES, Wilmington, Delaware; OF COUNSEL: John P. Coffey, Gregory A. Horowitz, and Anna K. Ostrom, of KRAMER LEVIN NAFTALIS & FRANKEL, New York, New York, *Attorneys for Plaintiff RCS Creditor Trust.*

Daniel A. Mason, of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, Wilmington, Delaware; OF COUNSEL: Allan J. Arffa, Gregory F. Laufer, and Jeremy A. Benjamin, of PAUL, WEISS, RIFKIND, WHARTON & GARRISON LLP, New York, New York, *Attorneys for Defendants Nicholas S. Schorsch, Edward M. Weil, Jr., William Kahane, Peter M. Budko, Louisa Quarto, RCAP Holdings LLC, AR Capital, LLC, AR Global Investments, LLC, American Realty Capital Retail Advisor, LLC, American Finance Advisors, LLC, American Realty Capital Healthcare III Advisors, LLC, American Realty Capital Hospitality Advisors, LLC, New York City Advisors, LLC, Global Net Lease Advisors, LLC, American Realty Capital Healthcare II Advisors, LLC, New York Recovery Advisors, LLC, and BDCA Adviser, LLC.*

Elizabeth A. Sloan and Brittany M. Giusini, of BALLARD SPAHR LLP, Wilmington, Delaware; OF COUNSEL: Michael C. Miller, Evan Glassman, and Michael G. Scavelli, of STEPTOE & JOHNSON LLP, New York, New York; Mark Murphy, of STEPTOE & JOHNSON LLP, Washington, DC, *Attorneys for Defendant Brian S. Block.*

GLASSCOCK, Vice Chancellor

This litigation concerns the Plaintiff's contention that the Defendants breached fiduciary duties in regard to a controlled entity, the stakeholders of which Plaintiff represents via proceedings in bankruptcy. The issue before me in this Memorandum Opinion concerns whether communication between the Plaintiff's counsel and a third-party stakeholder are protected by the Plaintiff's attorney-client privilege, notwithstanding the dissemination to the third party just mentioned. For reasons described below, I conclude that the communications are privileged. My reasoning follows.

This matter is currently before me on the Defendant ARC Parties'[1] Motion to Compel production of communications from the Plaintiff, RCS Creditor Trust (the "Trust"). The Trust was established under the plan of reorganization of RCS Capital Corporation ("RCAP") and certain of its affiliates as confirmed by the United States Bankruptcy Court for the District of Delaware on May 19, 2016 (the "Plan").[2] The Trust was assigned certain claims and causes of action pursuant to the Plan.[3] Non-party Luxor Capital Partners, LP ("Luxor") was RCAP's largest unsecured creditor and is the largest stakeholder in the Trust.[4] The ARC Parties seek, among other

---

[1] "ARC Parties" is the term the parties to this Action have used to refer to all Defendants other than Brian Block.
[2] Pl.'s Verified Compl., D.I. 1 ("Compl."), ¶ 14.
[3] *Id*.
[4] The ARC Parties Mot. to Compel, D.I. 336 ("ARC Parties Mot."), ¶ 8; Non-Parties Luxor Capital Partners, LP and Michael Conboy's Joinder to Pl.'s Opp'n to ARC Mot. to Compel, D.I. 358 ("Joinder to Trust Opp'n"), ¶ 3.

communications, emails between the Trust's counsel, Kramer Levin Naftalis & Frankel LLP ("Kramer Levin") and Luxor (and/or its counsel, Skadden, Arps, Slate, Meagher & Flom LLP ("Skadden"))—the Trust has withheld such emails on attorney-client privilege and common interest grounds. The Trust has also—ostensibly under the same theories—instructed a Luxor witness not to testify at his deposition about his discussions with Kramer Levin in preparation for his deposition or otherwise.[5]

The ARC Parties have moved to compel, arguing that privilege does not attach to communications between Kramer Levin and Luxor/Skadden and that such communications are not shielded by the common interest doctrine. The ARC Parties urge that because Kramer Levin is not Luxor's counsel in this litigation, their communications cannot be privileged. Furthermore, the ARC Parties contend that the common interest doctrine does not protect such communications because that doctrine requires a common *legal* interest whereas, in the ARC Parties' view, the Trust and Luxor have, at most, a common *financial* interest in the outcome of this litigation.

---

[5] The deponent, Michael Conboy, is a partner at Luxor, was directly involved in Luxor's investment in RCAP, and was designated as the Trust's Rule 30(b)(6) witness in this litigation. Joinder to Trust Opp'n, ¶¶ 3–4.

The attorney-client privilege is a creature of common law and has been codified in Delaware Rule of Evidence 502.[6] The attorney-client privilege protects "communications made for the purpose of facilitating the rendition of professional legal services to the client," where "communications are intended to be confidential, and the confidentiality is not waived."[7] The attorney-client privilege represents a recognition that free lawyer-to-client communication—beyond the reach of discovery—is a higher good than the general search for truth in litigation. Since the ability to preserve the *confidentiality* of the attorney-client communication is the overriding interest protected, the privilege generally ceases to apply where the communication is shared with a third party.[8] Thus, ordinarily, disclosure of privileged information by a client or an attorney with the client's permission operates as a waiver of privilege.[9] However, the general principle of waiver-by-disclosure does not obtain where the communication is shared only with a third party to facilitate the client's interest in advancing her legal case, and where the third party shares that same legal interest. In such an instance, the utility of the privilege and its supremacy to the search for truth remain intact. Therefore, among exceptions to

---

[6] D.R.E. 502.

[7] D.R.E. 502(b); *Riggs Nat'l Bank of Washington, D.C. v. Zimmer*, 355 A.2d 709, 713 (Del. Ch. 1976).

[8] *See* D.R.E. 510.

[9] *Texaco, Inc. v. Phoenix Steel Corp.*, 264 A.2d 523, 525 (Del. Ch. Mar. 24, 1970).

waiver-by-disclosure is the common interest doctrine, upon which the current dispute turns.[10]

The common interest doctrine "allows separately represented clients sharing a common legal interest to communicate directly with one another regarding that shared interest."[11] Because the application of the common interest doctrine impedes the search for truth, it must apply narrowly to retain its social utility; the shared interest must be both strategic and legal, and mere common financial or partisan shared interest is insufficient to invoke the doctrine. Here, the communications were between legal representatives of the Trust (who possesses the privilege) and a third party, Luxor (and/or their legal represenatives), and thus the privilege enjoyed by the Trust is waived absent an exception to the general waiver rule; the Trust and Luxor concede that the communications are discoverable unless those communications are shielded from disclosure based on the common interest doctrine.[12]

In order to discern whether, under the common interest doctrine, communication with a third party is privileged, the court must ask "whether the common interest invoked by the party asserting the privilege is sufficiently legal

---

[10] *See* D.R.E. 502(b).
[11] *Glassman v. Crossfit, Inc.*, 2012 WL 4859125, at *3 (Del. Ch. Oct. 12, 2012).
[12] The Trust and Luxor do not dispute the ARC Parties' contention that Kramer Levin does not represent Luxor and that communications between Kramer Levin and Luxor are not privileged as such.

rather than commercial."[13]  Furthermore, as a general rule, application of the common interest doctrine is appropriate "where it is clear that the parties were collaborating and sharing information in furtherance of a joint *legal* strategy or objective, rather than simply seeking legal advice with regard to a commercial transaction."[14]  The communicating parties' interests must be "substantially similar, not adverse."[15]  Communications between Kramer Levin and Luxor, in the Trust's view, fall under D.R.E. 502 because they are confidential communications made by Kramer Levin for the purpose of facilitating the rendition of professional legal services to the Trust.[16]  The Trust maintains that it and Luxor have a sufficiently common *legal* (rather than commercial) interest to shield such communications from disclosure.

---

[13] *Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011, at *4 (Del. Super. Ct. Feb. 2, 2011).  The dispute here as regards common interest is solely whether the Trust and Luxor have a sufficient common legal, rather than commercial, interest; accordingly, I do not discuss the remainder of the elements of the common interest doctrine.  Common interest protection is embodied in the Delaware Rules of Evidence: "[a] client has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications made for the purpose of facilitating the rendition of professional legal services to the client . . . (3) by the client or the client's representative or the client's lawyer or a representative of the lawyer to a lawyer or a representative of a lawyer representing another in a matter of common interest."  D.R.E. 502(b).  The ARC Parties do argue that the common interest doctrine cannot apply because "the underlying material is not privileged to begin with," however, I find that the Trust has met its burden to show that the communications concerned legal advice—keeping in mind that a privilege log must describe documents without revealing the privileged or protected information itself.
[14] *Titan*, 2011 WL 532011, at *4.
[15] *Glassman*, 2012 WL 4859125, at *3 (citing D.R.E. 502(b)) (internal quotation marks omitted).
[16] *See* D.R.E. 502(b).

5

The parties have presented dueling case-law applying the common interest doctrine. The ARC Parties contend that under the reasoning of *In re Simplexity LLC,* the common interest doctrine fails to preserve the privilege with respect to communications between Kramer Levin and Luxor/Skadden.[17] In *Simplexity*, a trustee in bankruptcy[18] (the "Trustee") brought an adversary proceeding against the manager of two investment funds that indirectly owned the debtors—the defendants served a document request on the Trustee and a subpoena on its attorneys, Hunton & Williams ("H&W") seeking communications between them and debtor's largest creditor, Fifth Third Bank ("FTB").[19] FTB had previously been the subject of claims by the creditors' committee of the bankruptcy estate (represented by H&W) based on FTB's having "swept"—seized—the funds in the debtors' bank accounts, allegedly destroying the debtors' $40–$100 million in going concern value and subjecting the debtors to more than $5 million in WARN Act liability.[20] The claims against FTB were subsequently settled and the settlement provided that future distributions from any recoveries were to be split 65% to FTB and 35% to the bankruptcy estate.[21] In *Simplexity*, the Trustee's claims against the defendants asserted that the defendants knew or should have known that FTB was going to

---

[17] 584 B.R. 495 (Bankr. D. Del. 2018).
[18] In the Bankruptcy Court of the District of Delaware.
[19] *Simplexity*, 584 B.R. at 497–498.
[20] *Id*. at 497.
[21] *Id*.

sweep the debtors' accounts.[22]     The defendants sought post-settlement communications between the Trustee (and H&W) and FTB; the Trustee asserted a right to withhold the communications on common interest grounds.[23]

The defendants in *Simplexity* argued that after the settlement with the Trustee, FTB's interest in the adversary proceeding was "financial or commercial, not legal" and the court noted that FTB would "receive a percentage of the proceeds from this litigation" and was a "secured creditor of the bankruptcy estate which the Trustee is administering."[24]  The court held that "FTB has no legal exposure to the Trustee or Defendants" and instead "sits on the sidelines and hopes that the Trustee, with H&W's help, will achieve success, collect on a judgment, and pay FTB its share of the proceeds.  Surely, that is a financial interest, not a legal one."[25]  The ARC Parties note that Luxor, like FTB, was the subject of potential claims by the Trust that it appears, per the ARC Parties, were subsequently settled, and Luxor is not a party to this litigation nor does it assert legal claims against the Defendants here.[26]  The ARC Parties urge me to conclude that Luxor, as the largest beneficiary of any recovery the Trust could obtain, has "only a commercial, rooting interest in the outcome of

---

[22] *Id.*
[23] *Id.* at 497–98.
[24] *Id.* at 499.
[25] *Id.* at 501.
[26] Affidavit of Gregory F. Laufer in Support of the ARC Parties' Mot. to Compel, D.I. 337 ("Laufer Aff."), ¶ 16 ("The Trust and Luxor Capital Group, LP appear to have entered into a settlement agreement on April 4, 2017."); *see* Laufer Aff., Ex. L.

7

this litigation."[27] The Trust, for its part, argues that *Simplexity* presented a factually distinguishable situation where there had been direct adversity between the communicating parties that the court found relevant because FTB "was at one time 'the bad guy' the target of [the debtors'] lawsuit, and the communications sought were potentially relevant for understanding what happened to flip the case from [FTB] to Defendants as being responsible for Debtors' misfortune."[28]

Rejecting the application of *Simplexity* to this matter, the Trust argues that I should find a common interest exists here under the rationale of *In re Leslie Controls, Inc.*[29] That case, also in the Bankruptcy Court for the District of Delaware, involved a discovery dispute between insurers and the debtor over whether a legal memorandum shared by the debtor pre-petition with an ad hoc committee of asbestos plaintiffs (the "Ad Hoc Committee") and the debtor's proposed future claimants' representative (the "Pre-Petition FCR") was protected from discovery by the insurers under the common interest doctrine.[30] The legal memorandum was prepared by insurance coverage counsel for the debtor providing advice with respect to the effect of the insurers' likely position on insurance recoveries in bankruptcy.[31] The debtor ultimately determined that a bankruptcy filing was necessary to deal with mounting

---

[27] ARC Parties Mot., ¶ 31 (citing *Simplexity*, 584 B.R. at 499) (internal quotation marks omitted).
[28] Pl.'s Opp'n to ARC Parties' Mot. to Compel, D.I. 355 ("Trust Opp'n"), ¶ 12 (citing *Simplexity*, 584 B.R. at 495, 497, 501) (internal quotation marks omitted).
[29] 437 B.R. 493 (Bankr. D. Del. 2010).
[30] *Id.* at 495.
[31] *Id.*

liabilities from asbestos personal injury lawsuits and, pre-filing, began negotiations with the Ad Hoc Committee and the Pre-Petition FCR to develop a consensual plan of reorganization—those negotiations were successful and the plan of reorganization, which the insurers objected to, was then pending before the court.[32] The insurers sought to discover the memorandum and a number of email exchanges regarding the memorandum—all of the exchanges occurred pre-petition and some occurred prior to an agreement on the plan of reorganization.[33]

Upon a survey of relevant cases, the court noted that "[b]roadly speaking, these cases stand for the proposition that the party invoking the common interest doctrine must present evidence that a legal interest is implicated. If such a legal interest is established then the common interest doctrine will apply (assuming the other elements of the test are met) even if there are separate or overlapping commercial interests."[34] The insurers had argued that the debtor, the Ad Hoc Committee, and the Pre-Petition FCR were adversaries on the issue of insurance proceeds since the information was shared pre-petition and prior to those parties reaching an agreement on the terms of a plan of reorganization. But the court noted

---

[32] *Id*.

[33] *Id*. at 496.

[34] *Id*. at 500. The test the court refers to is that the party invoking the protection of the common interest doctrine must establish "(1) the communication was made by separate parties in the course of a matter of common interest, (2) the communication was designed to further that effort, and (3) the privilege has not otherwise been waived." *Id*. at 497 (citing *In re Mortgage & Realty Trust*, 212 B.R. 649, 653 (Bankr. C.D. Cal.1997)).

that "the common interest privilege does not require a complete unity of interests among the participants, but it is limited by the scope of the parties' common interest."[35]   Regardless of the ongoing negotiations at the time of the communications, the court found the operative question was "whether the Debtor shared information with the Ad Hoc Committee and the Pre-Petition FCR that was related to the parties[sic] common legal interest against their 'common enemy,' the Insurers."[36]  The court held that while the debtor, the Ad Hoc Committee, and the Pre-Petition FCR had conflicting interests in the sense that each desired to obtain the largest share of the debtor's assets possible, the parties "shared a common interest in maximizing the asset pool, which would include insurance proceeds . . . the size of the pie and the size of the pieces are two separate questions.  The parties are in accord as to the former and adversaries as to the latter."[37]  Thus, because the information contained in the documents went to the size of the asset pool—a matter of common interest—a common legal interest existed and the communications were shielded by the common interest doctrine.[38]

The Trust argues that the facts here are on all fours with *Leslie Controls*.  The Trust equates Luxor to the Ad Hoc Committee because both hold an indirect interest

---

[35] *Id*. at 500–501.
[36] *Id*. at 502.
[37] *Id*.
[38] *Id*.

in a financial recovery—Luxor as a stakeholder in the Trust and the asbestos creditors as estate creditors. The Trust contends that the legal interest there, based on "an analysis of the insurance documents, as well as contract, insurance and bankruptcy law" is analogous to the interest expressed in the communications between Kramer Levin and Luxor/Skadden which are logged in the RCS Creditor Trust Privilege Log of Kramer Levin/Third Party Communications (the "Kramer Levin Log").[39]  The ARC Parties contend that *Leslie Controls* is distinguishable because the legal memorandum there was "clearly privileged, unlike the communications at issue here"[40] and because the debtor and the Ad Hoc Committee there had a joint legal interest regarding insurance coverage of the plaintiffs' claims against the debtor, while Luxor has not asserted any claims against the Defendants here.[41]

While *Simplexity* and *Leslie Controls* by no means represent the full field of cases applicable to this Motion they are instructive. Also instructive is this Court's holding in *Glassman v. Crossfit, Inc.* that certain communications were not protected by the common interest doctrine because the party claiming privilege there "failed

---

[39] Trust Opp'n, ¶ 11 (citing *Leslie Controls,* 437 B.R at 500). The Kramer Levin Log is attached as an exhibit to an affidavit submitted by the ARC Parties' counsel. Laufer Aff., Ex. A.
[40] The ARC Parties contend that the "Kramer Levin-Luxor communications . . . do not communicate legal advice from a lawyer to a client, but rather concern non-privileged matters such as 'scheduling,' 'conference calls,' and other litigation-related issues between two parties not in an attorney-client relationship with respect to this action." The ARC Parties' Reply in Support of their Mot. to Compel, D.I. 359, ¶ 9.
[41] ARC Parties Mot., ¶ 32 n.3.

to show that the contents of these documents were created in furtherance of developing a joint legal defense or strategy."[42] At issue here are communications between the Trust, formed to pursue claims on behalf of its stakeholders, and Luxor, its largest stakeholder (and/or their legal representatives).[43] Decisions where this Court has denied the existence of a legally cognizable common interest because communications center on commercial (rather than legal) objectives[44] are of limited utility here: the Trust conducts no business, other than the maximization of value of the legal claims assigned to it in the Plan.[45] Thus, in their nature practically all of the Trust's communications have a legal nexus.

In this Action, Luxor is by no means *Simplexity*'s sideline observer rooting for an outcome. Luxor, according to an affidavit submitted by the Trust's counsel, "worked diligently before and during the bankruptcy proceedings to identify litigation claims that could maximize the value of the estate" and "took a major role during the bankruptcy to ensure, over Defendants opposition, that such litigation claims were preserved and could be pursued effectively by the Trust."[46] Luxor's

---

[42] 2012 WL 4859125, at *3 (Del. Ch. Oct. 12, 2012).

[43] Luxor also has the right to appoint two of the three members of the Trust's board. Aff. of Gregory A. Horowitz in Opp'n to ARC Parties Mot. to Compel, D.I. 355 ("Horowitz Aff."), ¶ 5.

[44] *E.g. Titan Inv. Fund II, LP v. Freedom Mortg. Corp.*, 2011 WL 532011 (Del. Super. Ct. Feb. 2, 2011).

[45] The Trust is "a litigation trust, established for the sole and express purpose of investigating and pursuing litigation claims." Horowitz Aff., ¶ 10.

[46] *Id.*, ¶ 4.

active role continues pursuant to its right to appoint a majority of the Trust's board.[47] Communications between the Trust and Luxor (and/or their respective counsel) have been logged in the Kramer Levin Log and the description of *every* log item mentions "RCS litigation."[48] As the largest beneficiary and controller of the Trust, Luxor has a sufficient *legal* interest for communications with the Trust concerning litigation to be cognizable under our State's common interest doctrine. Like in *Leslie Controls*, the Trust and Luxor "share[] a common interest in maximizing the asset pool" (or defending against potential claims) and their communications appear to be in furtherance of that goal.[49] The Trust and Luxor, with counsel, were collaborating and sharing information in furtherance of a joint legal strategy or objective. Such communications invoke the central rationale of the attorney-client privilege. Thus, the common interest doctrine applies to communications between the Trust and Luxor.

The parties' briefing raised other issues besides the common interest under which the Trust sought to withhold production. First, the Trust noted that it logged purportedly privileged communications that occurred after the filing of the complaint in this Action pursuant to its generous reading of my June 13, 2019 bench ruling, but that the operative scheduling order does not require such communications

---

[47] *Id.*, ¶ 5.
[48] Laufer Aff., Ex A.
[49] *In re Leslie Controls, Inc.*, 437 B.R. 493, 502 (Bankr. D. Del. 2010).

to be logged.[50]  It was not my intent in the bench ruling to order production of post-complaint communications, and the parties may exclude such post-complaint communications on their privilege logs.  Finally, the ARC Parties have also contested the withholding of communications by the Trust between itself and third parties other than Luxor.  I ask that the Trust update its privilege log pursuant to this Memorandum Opinion, and the ARC Parties may file a new motion to compel such communications, as they find appropriate.  The updated privilege log should "provide sufficient information to enable [the ARC Parties] to assess [its] privilege claim."[51]

To the extent the foregoing requires an Order to take effect, IT IS SO ORDERED.

---

[50] *See* Third Amended Scheduling Order, D.I. 373, ¶ 6.
[51] *Klig v. Deloitte LLP*, 2010 WL 3489735, at *6 (Del. Ch. Sept. 7, 2010).

14